THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOSE DIAZ, Defendant-Appellant.

Second District   No. 2—86—0608

Opinion filed May 3, 1988.

G. Joseph Weller and Charles M. Schiedel, both of State Appellate Defender's Office, of Springfield, and Charles Hoffman, of State Appellate Defender's Office, of Chicago, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Jose Diaz, was found guilty by a jury in the circuit court of Du Page County of the offense of residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3) and was sentenced to an eight-year term of imprisonment. Judgment was not entered on a guilty verdict for the lesser offense of criminal trespass to a residence. Defendant raises three issues on appeal: (1) whether he was deprived of his right to trial by an impartial jury where the trial court failed to admonish the jurors not to discuss the case with anyone and to avoid exposure to media reports about the case; (2) whether the trial court improperly restricted his cross-examination of the State's expert witness; and (3) whether certain closing arguments of the prosecutor de-

prived him of a fair trial.

Briefly summarized, the trial testimony reveals that, in the late evening hours of July 17, 1985, Village of Bensenville police officers responded to a "burglary in progress" call for a residence in the village. Several persons were arrested. Defendant was not involved in this break-in. A few hours after leaving the residence, at about 5:30 a.m., patrolling police observed defendant running from the driveway of the previously burglarized premises. Defendant entered a nearby car which was then stopped by police. Inside the car, officers observed a pair of nunchucks and a knife which appeared to be similar to those they had seen earlier at the burglarized residence. These items, a jacket, and several stuffed animals found in the car were later identified by the owner of the residence as belonging to him.

Upon returning to the residence, officers observed that the house was ransacked and in disarray, distinct from the original burglary. Spilled garlic powder and sweet and sour sauce from the refrigerator were found on the kitchen floor. A partial shoe print was found on a telephone bill lying on the floor. Beer cans in the refrigerator had small red spots on the top similar to that on a beer can found between defendant's feet when he was stopped in the car in which he was riding.

A forensic chemist testified that particles of garlic powder that were taken from defendant's right running shoe were indistinguishable from the garlic powder spilled on the floor of the residence. Further, the red spots on a beer can in the refrigerator and the ones on a beer can found between defendant's feet shared a common origin at one time. An identification specialist testified that the footprint on the telephone bill found on the floor of the burglarized residence originated from the right heel of the running shoes taken from defendant. Defendant did not testify at trial.

■ Two of defendant's three contentions of error raised on appeal were not objected to at trial or contained in defendant's written post-trial motion. Both a trial objection and a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) Failure to raise an issue in this fashion results in a waiver of that issue on appeal. Plain error is one of the exceptions to the waiver rule in criminal cases. (*Enoch*, 122 Ill. 2d at 186.) Here, the plain error doctrine is inapplicable as neither of the two points raised for the first time on appeal demonstrates trial error.

One of defendant's points raised on appeal, but not below, is that he was deprived of his right to a fair trial by an impartial jury where

the trial court failed to admonish the jurors during trial not to discuss the case with anyone and to avoid exposure to media reports about the case. He argues that the case, because of several mid-trial continuances, lasted two weeks and "it is inconceivable that the jurors did not discuss the case with family, friends or co-workers." Defendant does not, however, cite to anything in the record to support this assertion and relies on *United States v. Williams* (8th Cir. 1980), 635 F.2d 744, in contending that actual prejudice need not be shown.

In *Williams*, after jury deliberations had begun, the jurors were allowed to go home for the evening, and no admonishment not to discuss the case outside the jury room was given then or at any time during the trial. The United States Court of Appeals for the Eighth Circuit held that when the potential prejudice from conversations outside the jury room is as great as it was there, a showing of actual prejudice to the defendant was not necessary in order to warrant a new trial for the failure to give such an admonishment. (*Williams*, 635 F.2d at 746.) In *dicta*, the court also intimated that it is essential to a fair trial that a jury be cautioned throughout the trial as to impermissible conduct and conversations outside the jury room.

■■ ■ We first observe that decisions of the lower Federal courts are no more than persuasive authority and are not binding on State courts. (*People v. Stansberry* (1971), 47 Ill. 2d 541, 545, 268 N.E.2d 431, *cert. denied* (1971), 404 U.S. 873, 30 L. Ed. 2d 116, 92 S. Ct. 121; *People v. Tucker* (1985), 138 Ill. App. 3d 503, 504-05, 485 N.E.2d 1290.) Notwithstanding the *dicta* in *Williams*, which we decline to follow, the actual facts in that case are distinguishable from the case at bar as the jurors in *Williams* were allowed to separate during their deliberations without an admonishment. In any event, defendant has failed to show any prejudice or improper influence on the jurors (*cf. People v. Rogers* (1985), 135 Ill. App. 3d 608, 625-26, 482 N.E.2d 639), and no transcript of the proceedings immediately before, during and following jury selection, when such admonishments are normally made, is available. The record shows that the trial judge was going to make some general comments just before jury selection, but excused the court reporter by agreement of the attorneys. While we agree that it is the better practice for the trial court to admonish the jurors, on the record, not to communicate about the case with others or be exposed to media reports concerning the case, the record does not indicate that there was any improper communication which prejudiced the defendant here. No error has been shown.

Defendant's second allegation of error, not raised below, concerns the prosecutor's final argument. He argues that the prosecutor im-

properly aroused the passions and emotions of the jurors when he exhorted the jurors to do their duties and sign the guilty verdicts, as follows:

"Based on all of the evidence again, it is just an obvious conclusion and I hope that you will use your common sense and find the defendant guilty and do your duties as jurors and sign your names to the guilty verdict form and find him guilty of residential burglary for having the intent to commit a theft when he entered the house.

\* \* \*

To end up here, we ask you to go into the jury room and consider all of the evidence. Once you consider all of the evidence, you will find that it all points to the guilt of the defendant; not only of the residential burglary charge but also of the criminal trespass to residence charge.

We ask for a finding of guilty on those—of those charges. We ask that you really have the courage enough to sign your names to both guilty verdicts and then come out and make a statement that that man is not going to be allowed to [do] that any more. No man is going to be allowed to do that any more, to go into a total stranger's house, a person he doesn't even know, to go through private pieces of clothing—

MR. NOSEK: [Defense Counsel] Objection, your Honor. Improper argument.

THE COURT: Overruled.

MR. HEAP: [Prosecutor] \*\*\* Something has to be said and you are the ones to say it. You are the only ones to say it at this point because you are now the triers of fact. Weigh all of this evidence and I am confident that when you weigh all of the evidence, the only evidence that was taken from the witness stand gives you one clear indication, that the defendant is guilty beyond any reasonable doubt. There is no reasonable, viable alternative and that is why, ladies and gentlemen, we would ask you to draw that one conclusion and to sign guilty verdicts on both counts; not just one count, but both counts because we have clearly proven beyond a reasonable doubt that the only man who is on charge, or who is on trial for that is clearly guilty beyond a reasonable doubt."

■ Courts of this State allow a great deal of latitude to the prosecution during closing arguments (*People v. Shum* (1987), 117 Ill. 2d 317, 351, 512 N.E.2d 1183), and the State may comment unfavorably on the evil effects of crime and urge a fearless administration of the

law (*People v. Hope* (1986), 116 Ill. 2d 265, 277-78, 508 N.E.2d 202); however, it is improper for the prosecutor to do or say anything in argument, the only effect of which will be to inflame the passion or arouse the prejudice of the jury against the defendant without throwing any light on the question for decision. (*People v. Dukes* (1957), 12 Ill. 2d 334, 342-43, 146 N.E.2d 14.) Each case must be decided upon its own facts. *People v. Bryant* (1983), 94 Ill. 2d 514, 523, 447 N.E.2d 301.

■ Considering the prosecutor's remarks, in the context in which they were made here, they properly reflected upon the law, as given in the instructions, that if the State proves each element of the crimes charged beyond a reasonable doubt, the jury must find defendant guilty. In this regard, the prosecutor urged the jurors to do their duty and find defendant guilty. The remarks were proper as an exhortation to the jury to fearlessly administer the law. See *People v. Boyle* (1987), 161 Ill. App. 3d 1054, 1096, 514 N.E.2d 1169; *People v. Taylor* (1985), 137 Ill. App. 3d 148, 154, 484 N.E.2d 383.

We have examined both *United States v. Young* (1985), 470 U.S. 1, 84 L. Ed. 2d 1, 105 S. Ct. 1038, and *United States v. Mandelbaum* (1st Cir. 1986), 803 F.2d 42, and do not find that the remarks made in those cases were similar to the comments made here, nor were they made in the same context as in the case at bar. Even were we to assume some slight transgression beyond the bounds of propriety in the arguments, defendant was not denied a fair trial, nor was the case factually close to find prejudice from these comments.

■ ■ Defendant's third contention of error, which was properly raised below, is whether he was deprived of his right to effectively cross-examine a State expert witness on the dissimilarities between fingerprint and footwear identification. Paul Sahs, an identification specialist with the Du Page County sheriff's department, had given an opinion on direct examination that a shoe print found on a telephone bill on the floor of the burglarized premises came from the right heel of defendant's running shoe. He based his opinion on the number of similarities in the characteristics of the comparisons.

In laying a foundation to qualify Sahs as an expert before giving the opinion, the State elicited testimony of Sahs' training. A part of his training in footwear examination came from attending fingerprint identification courses of which footwear identification instruction was a segment of the education. Sahs testified that fingerprint and footwear identification are related because each relies on class characteristics, fingerprint being classes of loops, whorls, and arches, and footwear being classes of design and general tread pattern and individual

characteristics which include wear and accidental characteristics, the latter causing markings on the shoe bottom. Defense counsel cross-examined Sahs extensively before Sahs was found to be qualified to render an opinion with respect to identification of footwear evidence.

The restriction of cross-examination, which is complained of by defendant, occurred later in the trial when his counsel attempted to question Sahs about the difference in evaluating similarities and dissimilarities of comparison in fingerprint evidence from footwear evidence. The trial judge, *sua sponte*, interjected that fingerprint comparison had nothing to do with the case and told counsel to cease this line of questioning. Defense counsel did not make any offer of proof as to the relevance of this questioning.

Defendant now argues that by restricting cross-examination, he was not able to show that footwear and fingerprint evidence are not generally entitled to the same acceptability and weight because footwear identification has been admitted through lay testimony and, further, it has not been shown that "no two shoeprints are alike," as is the accepted principle in fingerprint identification.

While wide latitude should be granted in cross-examination of an expert witness to test his opinion on subjects not of common knowledge (*People v. Charleston* (1985), 132 Ill. App. 3d 769, 776, 477 N.E.2d 762), generally, the scope of cross-examination rests within the discretion of the trial court, and its ruling will not be disturbed on review unless there has been an abuse of discretion resulting in manifest prejudice to the accused. (*People v. Gorney* (1985), 107 Ill. 2d 53, 59, 481 N.E.2d 673.) On this record, there was no improper restriction on defendant's right and opportunity to present his defense.

The testimony on direct examination concerning the relationship between fingerprint evidence and footwear evidence was only introduced as a foundation to show the relevant education of the witness in order to qualify him as an expert witness. Defendant's counsel thoroughly cross-examined the witness before the trial court qualified him to further testify as an expert in footwear identification. Later, counsel conducted a lengthy cross-examination of the witness regarding his testing procedure and opinion on the footwear identification. The restriction of further inquiry by counsel, which apparently sought to compare the difference in evaluating similarities and dissimilarities in characteristics in fingerprint evidence from footwear evidence, was not an abuse of discretion which, considering the lengthy cross-examination allowed, resulted in prejudice to the defendant. In the context of the questions counsel was asking, defendant appeared to inject the subject of fingerprint comparison evaluation procedures into the case

where the witness had not testified on this subject and the expertise at issue was footwear evidence. Under the circumstances, defendant was not improperly prohibited from exercising his right of cross-examination which resulted in any manifest prejudice to him.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

NASH and UNVERZAGT, JJ., concur.