THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY KRUEGER, Defendant-Appellant.

First District (1st Division)   No. 1—92—1804

Opinion filed March 28, 1994.

842

Ettinger & Pechter, Ltd., of Oak Lawn (Barry Pechter, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Judy L. DeAngelis, and Susan L. Miller, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

In the morning hours of April 1, 1990, police discovered the severely beaten corpse of Michael Wyand. Wyand's face was bloody, and he had abrasions and bruises in the abdominal region. Wyand's pants were pulled down around the thighs, his sweatshirt was pulled up and his shoes were off. Broken tree branches around the body were covered with blood consistent with Wyand's blood type. After investigating, the police arrested defendant, Larry Krueger, and charged him with murder. After a bench trial, the trial judge found Krueger guilty of murder in the first degree and sentenced him to 40 years in prison. Krueger appeals his conviction and sentence. We affirm.

The State presented numerous witnesses, none of whom actually saw Krueger kill Wyand. On March 31, 1990, Diane Pelaquin testified

that she was Krueger's girl friend. That evening, she and Krueger went bowling with Krueger's mother. At 11 p.m., they left the bowling alley and went to a party at 157th Street and Woodlawn in South Holland, Illinois. While at the party, Pelaquin decided to purchase some marijuana. She approached a man named "Rich" and gave him $35 for a quarter ounce of marijuana. Rich procured the marijuana from Wyand. When Rich returned with a bag of marijuana, Pelaquin decided that the bag was "short" of the quarter ounce she had paid for. Pelaquin confronted Wyand, and they began pushing and shoving each other. Pelaquin punched Wyand in the nose, causing bleeding.

Krueger approached Pelaquin and Wyand, and Krueger began arguing with and shoving Wyand. Krueger is 6 feet 2 inches and weighed 180 pounds. Wyand was 5 feet 7 inches and about 125 pounds. Pelaquin left Krueger and Wyand and went to another room, where she heard Wyand and Krueger continue their argument. The owner of the house threw Wyand and Krueger out of the house at this point. Krueger returned to the house 15 minutes later to get Pelaquin's car keys. He told her that he was driving Wyand home.

An hour later, Krueger returned to the house, and Pelaquin noticed that he had blood on his hands. She heard someone ask Krueger if he had gotten the money or the pot, and Krueger responded that he got some of the money. Pelaquin also heard someone ask Krueger what he had done with Wyand, and Krueger responded that he had dropped him off in Hammond, Indiana. Pelaquin and Krueger then left the party in Pelaquin's car. Krueger drove south on Woodlawn and stopped near 159th Street. He told Pelaquin that he was "checking to make sure Michael's all right; I beaten [sic] him up pretty bad." Defendant got out of the car and walked along some hedges. When he returned to the car, he said to Pelaquin that "he must have walked off."

The next morning Pelaquin noticed blood in the back seat of the car. Pelaquin and Krueger took the car to a car wash where they washed the back seat with some rags. They threw the rags in a trash bin, where they were later recovered by police.

Leonard Andrew Heeringa lived at 15748 Woodlawn in South Holland, where the party took place. According to Heeringa, Wyand was the first to arrive at the party. Wyand was skinny, scrawny and very weak. He wore thick glasses. Heeringa stated that Krueger and Wyand were fighting in a hallway of his house around midnight. Heeringa and a friend broke up the fight, but another one broke out 15 to 20 minutes later. Heeringa threw the two out of the house at that point. Outside the house, the fight continued. At one point, Wy-

and was on the ground, on his hands and knees, and Krueger was kicking him in the ribs, as Wyand searched for his glasses, which had fallen off. Heeringa broke up the fight again, telling Krueger that Wyand was too drunk to feel himself being beaten. Krueger acknowledged this statement.

Heeringa saw and heard Krueger offer Wyand a ride home. Krueger and Wyand drove off, and Krueger returned to the party an hour and a half later. Like Pelaquin, Heeringa noticed that Krueger had bloody hands. Krueger told Heeringa that he had dropped off Wyand somewhere in South Holland, but then changed his answer to Hammond, Indiana.

Edward Becker recounted events similarly to Heeringa. Becker stated that when Krueger returned from driving Wyand "home," Krueger said he "searched the body and he searched the crotch and he couldn't find nothing or anything but he did find 14 dollars." Becker also stated that when he returned, Krueger said that Wyand had punched him and given him a bloody nose, but he did not see any blood on Krueger's face.

Jeffery Travis noticed that when Krueger returned to the party at 2:30 a.m., he had blood on his hands and stated that he had dropped Wyand off "somewhere in Homewood." Travis stated that Krueger said he had punched Wyand "a few good times."

Terry Saunier stated that at one point during the initial fight between Krueger and Wyand, Wyand pulled a knife on Krueger, but Saunier took the knife away and put it in his own pocket. Saunier heard Krueger tell someone else that he had taken Wyand home. Saunier also stated that Krueger's nose was not bleeding when he entered the house at 2:30 a.m., nor did he appear injured in any way other than the blood on his hands.

Dr. Tae Lyong An, a forensic pathologist, performed the autopsy on Wyand. Wyand had numerous bruises and abrasions all over his body. He had a comminuted fracture of the jaw bone and a broken nasal bone. He also had a contusion on his left chest which measured 23 centimeters by 2 centimeters, which could have been caused by being struck by a tree branch. Dr. An performed an internal examination on Wyand and found irregular hemorrhaging in the frontal lobe and cerebellum. Wyand also had a massive laceration of the liver and a large amount of blood in the abdominal cavity. Dr. An testified that such an injury is a fatal one.

Dr. An also confirmed that Wyand's blood-alcohol level was .374% at the time of death. The fatal level is .450%. Dr. An stated that the level of alcohol could have contributed indirectly to Wyand's death; however, the cause of death was multiple blunt trauma.

Larry Krueger testified in his own behalf. His testimony did not differ significantly from any of the State's witnesses up until the time he and Wyand left the party. Krueger stated that after he left the party, he was driving with Wyand in the back seat. Wyand punched him in the nose, causing him to bleed. Krueger pulled the car over, got out, and told Wyand to get out. Wyand refused, and Krueger punched him a couple times and then threw him out. Wyand then lunged at Krueger and Krueger threw him to the ground. Wyand then picked up a $2^1/2$ foot branch and came at Krueger again. Krueger avoided the thrust and started beating Wyand. Eventually, Wyand "fell back, laid there, and didn't move." Krueger got scared and left to go back to the party. When he went home, he laundered the bloody shirt he had worn that night.

Krueger denied that he went through Wyand's clothes. He admitted that he did not tell anyone at the party that Wyand had attacked him with a tree branch. He also admitted that he told "all different stories" about where he had taken Wyand after they left the party.

Krueger claims that in light of the evidence, the State failed to prove him guilty of first degree murder beyond a reasonable doubt. On review, this court must ascertain whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) When considering a challenge to the sufficiency of the evidence, this court will not retry a defendant. In a bench trial, credibility determinations of witnesses and the weight to be given their testimony, as well as all reasonable inferences to be drawn from them, are responsibilities of the trial court. (*People v. McGrath* (1989), 193 Ill. App. 3d 12, 28, 549 N.E.2d 843.) Thus, the trial court is not required to believe the exculpatory testimony of a defendant; rather, the court must consider that testimony along with all of the evidence in the case to assess the plausibility of defendant's testimony. *People v. Crespo* (1983), 118 Ill. App. 3d 815, 818-19, 455 N.E.2d 854.

■ Krueger presents a three-fold challenge to the weight of the evidence. First he asserts that, pursuant to section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 7—1), he used justifiable force to repel an attack by Wyand. Under section 7—1, the use of deadly force in self-defense is justified only when a person reasonably believes that such force is necessary to prevent imminent death or severe bodily harm. The defendant must present some evidence that force had been threatened against him; that defendant was not

the aggressor; that danger of harm was imminent; that the force threatened was unlawful and that defendant actually believed the danger existed; that the kind and amount of force were necessary to avert the danger; and defendant's belief was reasonable. (*People v. Willis* (1991), 217 Ill. App. 3d 909, 577 N.E.2d 1215, *appeal denied* (1991), 142 Ill. 2d 664, 584 N.E.2d 139.) In order to prove beyond a reasonable doubt that the defendant did not act in self-defense, the State must disprove at least one of the above factors. (*People v. White* (1980), 90 Ill. App. 3d 1067, 414 N.E.2d 196.) The existence of self-defense is a question of fact to be determined by the trier of fact. *People v. Pintos* (1989), 133 Ill. 2d 286, 549 N.E.2d 344.

■ Here, defendant contends that Wyand attacked him with a tree branch that was $2^1/2$ feet long. Based on the testimony of all of the witnesses, as well as photographic evidence which is not in the record on appeal,[1] the trial judge found that defendant's account of events was "not even close" to possible. Although the trial judge did not find that Wyand was not the aggressor, he did find it unlikely that Wyand was capable of punching Krueger in the nose from the back seat of the car. The judge stressed that Wyand was so severely intoxicated at the time he and Krueger left the party that he had to be put into the back seat of the car in a prone position rendering him defenseless. The judge also noted the fact that Wyand's pants were pulled down and shirt pulled up, without shoes on, indicating that Krueger had a preconceived plan, whether he intended death to be the result or not, to drive Wyand to a secluded area in order to beat him and search for drugs. The judge also noted that Krueger showed no physical sign—bruises, etc.—of being in a brawl.

The trial court's findings of fact are supported by the evidence. Furthermore, the trial court was not required to believe Krueger's account of the events. Even were we to afford Krueger all the possible inferences from the evidence, which we are not required to do, we cannot conceive how deadly force was reasonable under the circumstances.

Alternatively, Krueger argues that he satisfied his burden under section 9—2(c) of the Criminal Code of 1961, which reduces a first degree murder conviction to second degree if the defendant can prove by a preponderance of the evidence that:

---

[1]There were photographs of the victim's body, which showed the seriousness of the beating which he had received. Conversely, the police, upon arresting Krueger, photographed him without his shirt on, and these photos showed absolutely no marks or bruises on him which would have indicated a fight.

"(1) [a]t the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed \*\*\*, but he negligently or accidentally causes the death of the individual killed; or

(2) at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but the belief is unreasonable." (Ill. Rev. Stat. 1989, ch. 38, par. 9—2(a).)

Krueger argues that his conviction should be reduced to second degree murder because he proved that he and Wyand were engaged in mutual combat. However, the trial judge rejected Krueger's "mutual combat" theory because of Wyand's intoxicated state and Krueger's lack of bruises, in addition to the other factors iterated above. We will not disturb this finding.

As far as the suggestion that Krueger had an unreasonable belief that his actions were justified, the same analysis applies. The trial judge did not believe Krueger's story when he compared it to the physical and other evidence in the case. The judge believed that Krueger planned to beat Wyand and steal any drugs he had on his person. We will not overturn these findings by the trial court unless they are so improbable or unsatisfactory that they create a reasonable doubt of guilt. (*People v. McGrath* (1989), 193 Ill. App. 3d 12, 28, 549 N.E.2d 843.) We are satisfied with the trial judge's copious findings in this regard.

■ Krueger also maintains that the State failed to prove the cause of Wyand's death beyond a reasonable doubt. This is simply not true. Cause of death is a question for the trier of fact, and this court will not disturb the findings of the trier of fact as to it unless they are improbable, unreasonable, and so unsatisfactory that there remains a reasonable doubt of guilt. (*People v. Gacho* (1988), 122 Ill. 2d 221, 244, 522 N.E.2d 1146 *cert. denied* (1988), 488 U.S. 910, 102 L. Ed. 2d 252, 109 S. Ct. 264.) The pathologist testified that the injury to Wyand's liver—a long gash—was a fatal one and that, combined with the numerous blows received to the head, the hemorrhaging from which is often fatal, and to other parts of his body, the cause of death was multiple blunt trauma. Although he stated that alcohol may have been "indirectly" linked to Wyand's death, Dr. An was not asked to amplify this statement, and he emphatically made his conclusion as to blunt trauma being the cause of death. Indeed, the pathologist's report did not state that alcohol poisoning was in any way related to the cause of death. Furthermore, at .374, Wyand's blood-alcohol level was still significantly short of the .450 level considered fatal.

In any event, the acts of the defendant need not be the sole cause of death. As long as the defendant's acts contributed to the death of the victim, the defendant may be found guilty of murder. (*People v. Brackett* (1987), 117 Ill. 2d 170, 176, 510 N.E.2d 877.) The State certainly proved the cause of Wyand's death beyond a reasonable doubt.

■ Krueger next raises some evidentiary complaints. He claims that the trial judge should have inferred that because Wyand drew a knife at the party, he was of a violent nature and could have been the aggressor prior to his fatal beating at the hands of Krueger. In essence, Krueger argues that the trial judge drew the wrong inference from certain evidence presented by him. As we noted earlier in this opinion, the trier of fact is entitled to draw any and all inferences from the evidence. The trial judge did not exclude evidence of Wyand's possession of the knife at the party. However, particularly because Wyand had been disarmed at the party, he found the pulling of a knife unpersuasive as evidence that verified Krueger's testimony regarding Wyand's aggression at the death site. Furthermore, the judge simply believed that Wyand was too drunk to be a threat to anybody, let alone someone half a foot taller and 50 pounds heavier. In the trial court's view, any inference upon character that Wyand's earlier possession of the knife might have raised could not, alone, overcome the particular facts of the case. That was the judge's prerogative as fact finder. Thus, we cannot agree with Krueger's assertion that the trial court misunderstood the purpose for which this evidence was offered.

■ In a similar vein, Krueger claims that the trial court erred in excluding the proposed testimony of Dr. Bernard Helciser. Dr. Helciser would have apparently testified about a hospital report rendered in 1987. Krueger alleges that the report showed Wyand's violent nature. Dr. Helciser had treated Wyand in 1987 when he was diagnosed as suffering from acute psychosis. Krueger's offer of proof was the medical report from 1987, issued by Helciser, which stated that Wyand suffered hallucinations and owned a knife. The trial judge excluded the testimony because, based on the offer, he found that it did not show Wyand to be of a violent nature or that he was more probably than not the aggressor.

Although evidence of a person's violent nature is admissible in a homicide case as circumstantial evidence that the victim was the aggressor, the decision as to whether such evidence is probative of the issue is within the sound discretion of the trial judge. (*People v. Ware* (1988), 180 Ill. App. 3d 921, 928, 536 N.E.2d 713.) Here, as the trial court found, there was nothing in the three-year-old report of

Dr. Helciser that bore on any tendency of Wyand toward violence. Furthermore, at oral argument, counsel for Krueger conceded that Dr. Helciser would not have actually testified that Wyand was of a violent nature. Thus, the trial court properly excluded the testimony.

■ Krueger next contends that the trial judge improperly limited cross-examination of the pathologist regarding alcohol poisoning. The trial judge excluded such testimony because it was outside the expertise of Dr. An (see *People v. Dunum* (1989), 182 Ill. App. 3d 92, 537 N.E.2d 898, *appeal denied* (1989), 127 Ill. 2d 625, 545 N.E.2d 118), and because the State had not questioned Dr. An regarding alcohol poisoning on direct examination. Generally, the scope of cross-examination lies within the sole discretion of the trial court, and its decision will not be disturbed unless an abuse of discretion has resulted in manifest prejudice to the accused. (*People v. Diaz* (1988), 169 Ill. App. 3d 66, 522 N.E.2d 1386, *appeal denied* (1988), 122 Ill. 2d 582, 530 N.E.2d 253.) As the State points out in its brief, nothing restricted Krueger from calling an expert on alcohol poisoning. In fact, the trial judge informed defense counsel that he could call such experts if he wanted to dispute Dr. An's conclusions. However, the trial judge would not allow defense counsel to question Dr. An on specific matters within the field of toxicology about which he was not qualified to render an opinion. Nonetheless, counsel was permitted to, and did, ask Dr. An questions regarding the level of alcohol in Wyand's blood and how it compared to that considered fatal. We find no error in the scope of Dr. An's cross-examination.

■ Finally, Krueger contends that his sentence was excessive. Sentencing is discretionary with the trial court and cannot be challenged on review absent an abuse of discretion. When the sentence is within the applicable statutory provisions, the trial court is presumed to have properly imposed it. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Here, Krueger's 40-year sentence is well within the range prescribed by the applicable section of the Unified Code of Corrections. See Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1) (allowing 60- year maximum sentence).

Yet, Krueger contends that the trial court failed to consider mitigating evidence of "extraordinary rehabilitative potential." However, the trial court explicitly stated that in reaching its sentencing decision, it had considered all of the documents submitted in Krueger's behalf. Furthermore, the trial court noted the vicious nature of the crime, including the fact that Krueger had begun beating Wyand at the party despite the fact he knew him to be very intoxicated. Contrary to Krueger's assertion, the trial judge found that the murder was not accomplished during an "intoxicated rage."

(See *People v. Treadway* (1985), 138 Ill. App. 3d 899, 486 N.E.2d 929.) Rather, Krueger had told people at the party that things had calmed down between him and Wyand. Krueger was able to drive Wyand to a secluded area, where he beat him. According to the trial judge, the driving of the car alone refuted the claim of intoxicated rage. We agree.

Affirmed.

BUCKLEY and MANNING, JJ., concur.