THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DALE BRAGG, Defendant-Appellant.

First District (5th Division)   No. 1—93—3077

Opinion filed December 29, 1995.

470

McNULTY, J., joined by T. O'BRIEN, J., specially concurring in part.

Rita A. Fry, Public Defender, of Chicago (Beth Ilyse Solomon, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and William L. Toffenetti, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

The defendant, Dale Bragg, was convicted of armed robbery in a jury trial and sentenced to 15 years of imprisonment. On appeal, defendant claims the trial court erred in these decisions: (1) denying defendant's motion to suppress identification testimony; (2) refusing to sever his trial from a codefendant's trial; (3) denying his challenge against a venireperson for cause; (4) permitting the State to offer witnesses for *modus operandi* testimony; (5) overruling defendant's objection to testimony that violated a motion *in limine*; (6) allowing the State to introduce testimony on the recovery of weapons and valuables; (7) preventing defendant from presenting testimony that he had worked as an undercover agent in the past; (8) denying defendant's motion to dismiss for violation of the speedy trial statute; and (9) sentencing defendant to 15 years of incarceration.

We affirm.

BACKGROUND

On September 8, 1991, at 2:20 p.m., three men committed an armed robbery at the Order of Sarafina Church, a predominantly Nigerian congregation located at 5129 North Broadway, Chicago. A few minutes after the robbery, defendant was arrested after being cornered by church members near where the incident occurred. Defendant had suffered a head wound and was bandaged at a hospital before arriving at the police station.

At the station, defendant gave information to Officer Michael Cronin that formed the basis of a search warrant for codefendant Robert Brandon. Police searched Mr. Brandon's apartment and discovered proceeds from the robbery and several weapons. A lineup with defendant was held at 8 p.m. on September 8, 1991, about five hours after the robbery. Defendant wore the same clothing he had when arrested, and he also had the hospital bandage around his head. Three witnesses identified the defendant from the lineup as one of the perpetrators. Defendant was held in custody and indicted for the robbery, as were codefendants Mr. Brandon and Anterio Charles.

The previous week, on September 1, 1991, at 3 p.m., a robbery had occurred at the Celestial Church of Christ, a predominantly Nigerian congregation located at 7117 North Ravenswood in Chicago. On September 9, 1991, two witnesses from that robbery identified the defendant in a lineup. Proceeds from this robbery were also recovered from Mr. Brandon's apartment.

On April 15, 1992, defendant filed motions to suppress his statement to Officer Cronin and to suppress the identifications. The motions were continued by agreement until July 14, 1992, when the defendant was ready to proceed, but the State requested another continuance, which was opposed by the defendant. The court granted the continuance until September 16, 1992, at which time the State stated it needed another continuance because a witness to defendant's statements was on military furlough until October. That continuance, opposed by the defendant, was granted until October 5, 1992. On October 6, 1992, the State's missing witness testified that police questioning of defendant had continued after defendant had invoked his right to remain silent. The court continued the motion to suppress the statements but denied the motion to suppress the identifications.

On October 6, 1992, the defendant also presented a motion to dismiss pursuant to section 103—5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103—5(a) (West 1992)), arguing that the State had not brought him to trial within 120 days from the date he was taken into custody. Defendant included 44 days before his pretrial motions and the 79 days after July 14, 1992, when he opposed further continuances by the State. Although the trial court believed the State responsible for the delay after July 14, 1992, the court held that the defendant wanted the State to respond to his motions before proceeding to trial, and thus the statute was tolled the entire time the State was responding to the defendant's motions.

On May 18, 1993, the trial court granted the State's motion to

use other crimes evidence. On June 1, 1993, the trial court granted defendant's motion *in limine* suppressing the defendant's statements until such time as he testified, after which they could be used to impeach him. The same day, defendant requested that his trial be severed from that of codefendant Brandon, but his request was denied. On June 2, 1993, the State agreed to sever Mr. Charles' case from that of defendant.

On June 3, 1993, Mr. Brandon requested new counsel, and when that request was denied, he requested to proceed *pro se.* Mr. Brandon did not participate in jury selection, and the trial court allowed defendant to use two of Mr. Brandon's unused peremptory challenges. Mr. Brandon also ignored several orders of the court, culminating in a citation for contempt and a six-month prison sentence. Defendant renewed his request for severance, which was again denied. Opening statements were given on June 4, 1993. On June 7, 1993, before the State began presenting evidence, the trial court declared a mistrial as to Mr. Brandon due to continued difficulties of his *pro se* representation. Defendant's motion for a mistrial was denied.

At trial, five witnesses described the robbery at issue and five other witnesses testified as to the circumstances of the robbery at the Celestial Church of Christ the previous week. For the robbery of the Sarafina Church, witnesses claimed that while Brandon and Charles went around the church collecting valuables, defendant stood as a lookout brandishing a gun at the church entrance and shielding himself with a baby. Witnesses of the previous church robbery described defendant, Brandon, and Charles proceeding in a manner very similar to that of the Sarafina Church robbery. Defendant testified that he had been on his way to the Sarafina Church when congregation members ran out and screamed that defendant's friend had taken their money, after which defendant ran but was caught and beaten. The jury convicted the defendant of armed robbery, and he was sentenced to 15 years of imprisonment.

OPINION

I

Defendant first argues that the court erred in denying his motion to suppress identifications from lineups which he alleges were unduly suggestive. The determination as to whether a pretrial confrontation in a specific instance is so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny due process depends on the totality of the circumstances surrounding it. (*People v. Richardson* (1988), 123 Ill. 2d 322, 348, 528 N.E.2d 612.) Defendant bears

the burden of proving that a lineup procedure was impermissibly suggestive and resulted in the denial of due process. (*Richardson*, 123 Ill. 2d at 348.) The admission of evidence is within the sound discretion of the trial court, and its ruling should be upheld absent a clear abuse of discretion. *People v. Medrano* (1995), 271 Ill. App. 3d 97, 103, 648 N.E.2d 218; *People v. Stone* (1993), 244 Ill. App. 3d 881, 893, 614 N.E.2d 293.

■ Defendant first contends that his bandage and his clothes rendered the lineup impermissibly suggestive. As to the bandage, participants in a lineup need not be physically identical. (*Richardson*, 123 Ill. 2d at 350 (defendant had the only " 'Afro' hairstyle").) This court has specifically held that bandages are not impermissibly suggestive so long as the bandages were not present when the witness first viewed the defendant, which was the situation in this matter. (*People v. Morissette* (1986), 150 Ill. App. 3d 431, 437, 501 N.E.2d 781.) As to the clothes, defendant believes he was prejudiced because his clothes matched those of descriptions given by the witnesses. However, there is no requirement that police find matching clothes for everyone in the lineup. (*People v. Johnson* (1991), 222 Ill. App. 3d 1, 8, 582 N.E.2d 1331 (no error when defendant was only person in lineup with red pants matching witness' description).) Defendant relies on *People v. Franklin* (1974), 22 Ill. App. 3d 775, 317 N.E.2d 611, but in that case the police made the defendant *change* into clothes that matched the witness' description, and thus ·*Franklin* is inapposite to the circumstances in this matter. Therefore, we find that the lineups were not impermissibly suggestive.

Even assuming *arguendo* that any of the pretrial identification procedures were impermissibly suggestive, the identifications were still admissible because the totality of circumstances clearly and convincingly established that those identifications had an independent origin in the witnesses' memories of events at the time of the crime. (*Richardson*, 123 Ill. 2d at 350.) Factors relevant to this determination include: the witness' opportunity to view the suspect at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the suspect, the witness' level of certainty demonstrated at the confrontation, and the length of time between the crime and the confrontation. (*Richardson*, 123 Ill. 2d at 350.) Examining these factors, we conclude that the lineup witnesses who identified defendant had ample opportunity to view the defendant and were paying very close attention, the length of time between the crime and confrontation was short, and none of the witnesses who identified defendant expressed doubt about their identifications. Thus, we find that any possible error was cured under the totality of the circumstances.

## II

■ Defendant argues that he was denied a fair trial by the court's decisions to deny a severance or mistrial after Brandon's behavior. Generally, defendants who are jointly indicted are to be jointly tried unless a separate trial is necessary to avoid prejudice to one of the defendants. (*People v. Mahaffey* (1995), 165 Ill. 2d 445, 469, 651 N.E.2d 174.) Because of Brandon's mistrial before the presentation of any evidence, defendant suffered no prejudice before his separate trial became a fact.

As to defendant's request for a mistrial, the decision to declare a mistrial rests within the discretion of the trial court, and it is a power that should be exercised with great caution. (*Illinois v. Sommerville* (1973), 410 U.S. 458, 461, 35 L. Ed. 2d 425, 429, 93 S. Ct. 1066, 1069.) Although defendant suffered no direct prejudice from Brandon's actions, defendant relies on *People v. Grignon* (1976), 37 Ill. App. 3d 418, 346 N.E.2d 82. In *Grignon*, the court held it was not an abuse of discretion for the trial court to declare a joint mistrial where members of the jury may have believed a prejudicial statement about a codefendant actually referred to the defendant. (*Grignon*, 37 Ill. App. 3d at 426.) However, in this matter, there was no such confusion, and thus *Grignon* is inapposite and the trial court did not abuse its discretion.

## III

Defendant next claims that the trial court should have excluded venireperson John Taylor for cause. The following colloquy took place at jury selection:

> "THE COURT: Is there anything about the fact that the location of the alleged robbery is a church that would affect any of your abilities to be fair and impartial jurors?
>
> MR. TAYLOR: I have a problem with that.
>
> THE COURT: Everyone else except Mr. Taylor indicated no.
>
> MR. TAYLOR: The reason being I hold a position of deacon in my church. I handle money and I pay tithes. It's important to me. Because of where the—location of where the alleged offense, whatever you call it, I have a problem with that from a spiritual viewpoint.
>
> THE COURT: All right. Well, from a spiritual point of view, Mr. Taylor, certainly from a spiritual point of view people are presumed innocent. Would you agree?
>
> MR. TAYLOR: I agree with you. I don't have a problem with that.
>
> THE COURT: All right. If someone committed an armed robbery on the street or in the church it would be against the law.

476

MR. TAYLOR: Yes.

THE COURT: No matter where the robbery occurred; is that correct?

MR. TAYLOR: That's true.

THE COURT: If the robbery allegedly occurred on the street do you believe that you can give both sides a fair trial?

MR. TAYLOR: Yes.

THE COURT: All right. Now, you are saying because of the fact that it is alleged to have occurred in a church that you don't think you can fairly listen to the evidence, the arguments, and my instructions on the law and decide the case based upon those things putting aside the location where the offense occurred?

MR. TAYLOR: Well, what I am saying is yes, I can listen to it; but knowing that in the church, knowing my commitment to tithing and, you know, something like that to happen in the church, which is in my opinion the [L]ord's money, I have a problem with that.

THE COURT: All right, Mr. Taylor. I don't think we're disagreeing, Mr. Taylor, the point is not where the offense occurred, but the point is did the offense occur no matter where it occurred.

MR. TAYLOR: Right.

THE COURT: That's the issue for you to consider, did the offense occur. ***

MR TAYLOR: I understand.

THE COURT: For yourself putting aside the fact that it appeared or occurred in a church, I don't think you are in disagreement with me. You are saying you think it's terrible to take money in church or anyone [*sic*], but because you have a commitment to a church you think it's maybe more egregious that it happened in a church?

MR. TAYLOR: I don't disagree with you.

THE COURT: Okay.

MR. TAYLOR: Just a very most unfortunate incident under those circumstances.

THE COURT: All right. Are you saying you can't be fair? Are you saying you can't follow the law because of the location where it occurred?

MR. TAYLOR: I will do my best.

THE COURT: Well, all right. I'm asking, Mr. Taylor—I think you know exactly what I am asking.

MR. TAYLOR: I will follow the law. You know, I will follow the law. I'm giving you my opinion, that's all.

THE COURT: All right. If you will follow the law that is all I can ask of you, to follow the law. *** If you can do that then that is all I'm asking you to do, sir, not asking you to put aside any

religious belief or conviction, anything like that. That's not what I'm asking. Do you understand me?

MR. TAYLOR: I understand.

THE COURT: Do you believe you can do that?

MR. TAYLOR: I can do it."

The party challenging the venire member must show the actual existence of a disqualifying state of mind as will raise the presumption of partiality. (*People v. Reid* (1995), 272 Ill. App. 3d 301, 307, 649 N.E.2d 593; *People v. Johnson* (1992), 149 Ill. 2d 118, 138, 594 N.E.2d 253.) In reviewing a decision whether to excuse a venireperson for cause, it is necessary to consider the venireperson's statements as a whole and not in isolation. (*People v. Taylor* (1995), 166 Ill. 2d 414, 421, 655 N.E.2d 901.) The circuit court is in a superior position to ascertain the meaning that a venireperson intends to convey where there are inconsistencies in the answers he or she has given. (*Taylor*, 166 Ill. 2d at 421.) The determination of whether to allow a challenge for cause is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Taylor*, 166 Ill. 2d at 421-22.

Applying these principles, we find the trial court was within its discretion in concluding that Taylor's statements as a whole did not show a disqualifying state of mind. Although Taylor gave one equivocal answer—"I will do my best" to follow the law—after that Taylor stated three times that he could successfully follow the law as presented to him. An equivocal response by a prospective juror does not necessitate striking the prospective juror for cause where the prospective juror later states that he will try to disregard his bias. (*People v. Hobley* (1994), 159 Ill. 2d 272, 297, 637 N.E.2d 992 (not error to refuse dismissal for cause where one juror first stated she would "try to" follow applicable law and another juror first "guessed" she could follow applicable law).) The trial judge went into substantial detail with Mr. Taylor and had the best opportunity to observe his demeanor, and thus we conclude the court did not abuse its discretion.

The defendant relies on *People v. Johnson* (1991), 215 Ill. App. 3d 713, 575 N.E.2d 1247. However, in *Johnson*, that venireman repeatedly gave equivocal responses when asked if he could be impartial. On several occasions we have held that a single equivocal answer, as in *Hobley*, does not require acceptance of a challenge for cause. In *Reid*, we found no abuse of discretion where the venireman stated he would "try" not to let his experiences affect his judgment. (*Reid*, 272 Ill. App. 3d at 307-08.) In *People v. Barragan* (1993), 266 Ill. App. 3d 961, 641 N.E.2d 535, there was no abuse of discretion when a venireman first stated that " '[i]t would be hard' " to be fair. (*Barragan*, 266

Ill. App. 3d at 975.) The jurors in both *Reid* and *Barragan*, as in the instant matter, expressed a willingness to follow the law in their other answers. Therefore, we find *Reid*, *Hobley*, and *Barragan* applicable to this matter, and not *Johnson*, and hold that the trial court acted within its discretion in refusing the challenge against Taylor.

## IV

Defendant next claims that he was denied a fair trial through testimony that only showed his propensity to commit crime. Evidence of other crimes is not admissible to establish the defendant's propensity to commit crime; however, evidence of other crimes committed by defendant may be admitted if relevant to establish any material question other than the propensity to commit crime. (*People v. Hill* (1995), 272 Ill. App. 3d 597, 604, 650 N.E.2d 558; *People v. Miller* (1993), 254 Ill. App. 3d 997, 1010, 626 N.E.2d 1350.) As with other evidence, in determining admissibility, the trial judge must balance the relevancy of the evidence against the possible prejudicial effect. (*Miller*, 254 Ill. App. 3d at 1010-11.) The trial judge's ruling that the evidence is admissible will not be reversed absent a clear showing of abuse of discretion. *Miller*, 254 Ill. App. 3d at 1011.

■ The *modus operandi* exception has been recognized as circumstantial evidence of identity on the basis that crimes committed in a similar manner suggest a common author and strengthen the identification of a defendant. (*Miller*, 254 Ill. App. 3d at 1012.) The offenses must be so similar that evidence of one crime tends to prove the defendant is guilty of the crime charged. (*Miller*, 254 Ill. App. 3d at 1012.) However, the crimes need not be identical or so distinctive as to amount to a "signature," as some dissimilarities will always exist between crimes. (*Miller*, 254 Ill. App. 3d at 1012.) The trend in Illinois is that the similarities must outnumber the differences, not that the crimes must be similar in every respect. *Miller*, 254 Ill. App. 3d at 1012.

■ In the instant matter, we find that the trial court properly admitted testimony of the September 1, 1991, robbery to show *modus operandi*. The robberies both took place at Nigerian churches a few miles apart, at about the same time in the afternoon, one week apart. In both robberies, three men with guns entered the churches and ordered the congregations to lie down on the floor and put their money, purses, and other valuables on the floor. In both incidents two of the three men went around and collected the proceeds, and in both incidents the church offices were robbed as well. Lastly, Mr. Brandon, Mr. Charles and the defendant were identified as participating in both robberies, and proceeds from both robberies were found

in Mr. Brandon's apartment. We find the similarities between the crimes to be overwhelming. Thus, we conclude the trial court did not abuse its discretion in allowing the *modus operandi* evidence.

Defendant cites *People v. Triplett* (1981), 99 Ill. App. 3d 1077, 425 N.E.2d 1236, in support of his contention that the crimes in this case were not similar enough to allow *modus operandi* evidence. Although the crimes in *Triplett* did have several similarities, there were also substantial differences in the methods used:

> "[T]he defendant first approached the manager of the first station on a pretext whereas during the second robbery the offender simply confronted the manager with a gun; the first offense involved two offenders whereas there was only one offender in the second offense; a black gun was used during the first robbery, a 'shiny' gun in the second; a green two-door sedan was used during the first crime and a green station wagon in the second; and the two crimes were committed three months and several miles apart." (*Triplett*, 99 Ill. App. 3d at 1083.)

Unlike *Triplett* and its substantial dissimilarities between crimes, the instant case does not present differences of the magnitude of the five listed in *Triplett*, and thus *Triplett* cannot sustain defendant's claim.

Defendant also contends that the prejudicial effect of the evidence outweighed its relevance. However, the evidence was strongly probative that defendant was not a mere bystander in the charged offense, but rather was an active participant with Mr. Brandon and Mr. Charles as he had been in the previous crime. Therefore, we cannot say it was an abuse of discretion for the court to find that the probative value of the evidence outweighed its prejudicial effect.

Lastly, defendant contends that the prosecution went into unnecessary and prejudicial detail as to the previous crime. However, defendant relies on a case where only a witness' previous opportunity to identify the defendant was involved—*People v. Butler* (1975), 31 Ill. App. 3d 78, 334 N.E.2d 448. Because *modus operandi* was at issue in this matter, the State necessarily had to delve into greater detail of the previous crime to establish its similarities to the charged offense, and thus *Butler* is inapposite.

## V

■ Defendant contends that the State violated a motion *in limine* by introducing testimony that Officer Cronin had a conversation with defendant prior to obtaining a search warrant. However, defendant's motion *in limine* precluded the State from introducing evidence that defendant was the confidential informant whose statements formed the basis of the search warrant. The motion was not violated by

testimony that Officer Cronin talked with defendant, as the State had not even broached the subject of the search warrant when defendant first objected. Defendant also contends that the State planted an "inference" from Officer Cronin's testimony that he later obtained a search warrant. However, we agree with the trial court that the State elicited no testimony that defendant's statements formed the basis of the warrant.

Defendant also makes issue of the State's references in closing argument to defendant's statements to Officer Cronin. However, in granting the motion *in limine*, the trial court specifically stated that defendant's statements could be used to impeach him if he decided to testify. Because defendant did testify, the State's remarks in closing argument were not improper.

## VI

■ Defendant next claims the court erred in allowing the State to introduce weapons and proceeds from Brandon's apartment that were not specifically identified by victims of the crime. As to the proceeds—jewelry and other valuables—the defendant has not explained in his brief how he was prejudiced by this evidence, nor included any citations indicating that such evidence was error, and thus he has waived this issue. 134 Ill. 2d R. 612(i); *People v. Ortiz* (1980), 91 Ill. App. 3d 466, 414 N.E.2d 1072.

As to the introduction of the handguns, defendant argues that this evidence was irrelevant because it had no connection to defendant personally or to his guilt of the crime. However, witnesses stated that defendant committed the crime with a handgun. A sufficient nexus exists where the weapon is suitable for the crime charged although it need not have been actually used in committing the crime. (*People v. Maldonado* (1992), 240 Ill. App. 3d 470, 479, 608 N.E.2d 499; *People v. Free* (1983), 94 Ill. 2d 378, 415-16, 447 N.E.2d 218.) In addition, the introduction of all four guns tended to implicate the defendant by refuting a defense theory—that Mr. Brandon and Mr. Charles were the only men involved in committing the crime. Therefore, the trial court properly admitted this relevant evidence.

The defendant relies on *Maldonado,* in which we found error in the introduction of an extra weapon. However, in *Maldonado* the State admitted that the extra weapon was not associated with the crime, while in this matter the trial court specifically held that testimony had revealed that the handguns at issue were suitable for the commission of the offense. Even when the connection of a weapon to the defendant is tentative, a defendant " 'may point out the weakness of its probative value, but he cannot bar its admission.' " *Free,*

94 Ill. 2d at 417 (gun accessories admissible where connected to crime), quoting *People v. Scott* (1963), 29 Ill. 2d 97, 114, 193 N.E.2d 814 (wrench near decedent's body admissible although not connected to defendant).

## VII

■ Defendant claims the court erred in barring the testimony of Agent Victor Robinson, who would have testified that the defendant had worked for the government in the past. However, defendant's own testimony stated that on the day of the crime, he went to the church without any connection to his previous government involvement. Thus, the court did not abuse its discretion in concluding that Agent Robinson's testimony was irrelevant because defendant's previous government involvement did not form a defense to the crime for which he was accused.

In his reply brief, defendant argues for the first time that this testimony could have shown that he assisted in the investigation of church members and, thus, could have demonstrated bias by the State's witnesses against the defendant. However, defendant never made this contention in the trial court. Because this specific basis for admissibility of the proffered evidence was not raised below, the defendant has waived this issue on appeal. *People v. Todd* (1993), 241 Ill. App. 3d 542, 549, 608 N.E.2d 933; *People v. Grant* (1992), 232 Ill. App. 3d 93, 105, 596 N.E.2d 813.

## VIII

■ Defendant next contends that the State violated section 103—5(a) by not bringing him to trial within 120 days from the date he was taken into custody. Defendant bears the burden of proving that the State has violated this statute. (*People v. Smith* (1993), 251 Ill. App. 3d 839, 842, 623 N.E.2d 857; *People v. Jones* (1984), 104 Ill. 2d 268, 280, 472 N.E.2d 455.) We will not disturb a trial court's attribution of delay to a given party absent a clear abuse of discretion. *People v. Williams* (1995), 272 Ill. App. 3d 868, 877, 651 N.E.2d 532; *People v. Turner* (1989), 128 Ill. 2d·540, 551, 539 N.E.2d 1196.

Defendant argues that the State was responsible for 123 days of delay before his trial—the 44 days before his pretrial motions and the 79 days after he opposed further continuances by the State to address his pretrial motions. However, we conclude the trial court properly charged the defendant with the entire time period the State used to address defendant's motions. The applicable speedy-trial period is tolled by those delays in trial to which the defendant contributes or causes. (*People v. Staten* (1994), 159 Ill. 2d 419, 433, 639 N.E.2d 550.) A delay occasioned by motions by a defendant is

ordinarily chargeable to the defendant. (*People v. Erickson* (1994), 266 Ill. App. 3d 273, 276, 639 N.E.2d 979; *Jones*, 104 Ill. 2d at 278.) Only in exceptional circumstances will the delay in ruling on a defense motion not be attributed to the defendant. *Erickson*, 266 Ill. App. 3d at 276.

In the instant case, we do not find the State's conduct so exceptional as to charge it with the time spent responding to the defendant's motions. For the motion to suppress the defendant's statements to the police, the State at that time was required to produce Detective Wojtowicz under the material witness rule. (*People v. R.D.* (1993), 155 Ill. 2d 122, 134, 613 N.E.2d 706.) On July 14 and September 16, 1992, when Detective Wojtowicz was on military furlough, the trial court saw fit to grant continuances for the State until the detective returned in October. We do not believe that granting the continuances was an abuse of discretion, and thus the State's behavior was not so exceptional as to warrant charging it with this time. If the State had engaged in dilatory behavior in responding to the defendant's motion, the trial court had many options at its disposal, including the denial of the request for a continuance. We find that the trial court did not abuse its discretion in concluding that section 103—5(a) was not the appropriate or necessary instrument to remedy its situation.

The defendant cites *People v. Terry* (1975), 61 Ill. 2d 593, 388 N.E.2d 162, but that case does not support his claim. In *Terry*, the State had ignored orders of the trial court to respond to the defendant's motions, as opposed to the State's proper motions for continuances which were granted in this case. Moreover, *Terry* stated that its defendant "took action that was inconsistent with an intention to have his pending motions answered. The prosecution *** should have judged the demand for trial as indicating that the defendant no longer wished to pursue his earlier motions but instead wished to go on trial." (*Terry*, 61 Ill. 2d at 596.) The trial court in this case expressly held that the defendant had at all times indicated his wish to pursue his motions, and thus the trial court did not abuse its discretion in holding that the defendant's motions continued to toll the speedy-trial period.

## IX

■ Lastly, defendant argues that the court abused its discretion by sentencing him to 15 years of incarceration. Absent an abuse of discretion, the sentence imposed by the trial court will not be altered upon review. (*People v. Gonzalez* (1992), 151 Ill. 2d 79, 89, 600 N.E.2d 1189.) When a reviewing court examines the propriety of a sentence,

it should proceed with great caution and care and must not substitute its judgment for that of the trial court merely because it would have weighed the sentencing factors differently. (*People v. Streit* (1991), 142 Ill. 2d 13, 19, 566 N.E.2d 1351.) It is the province of the trial court to balance these factors and make a reasoned decision in each case. *Streit*, 142 Ill. 2d at 21.

The defendant argues that the trial court placed improper emphasis on the fact that defendant robbed a church while ignoring his minimal criminal history and potential for rehabilitation. However, a crime in a place of worship is an aggravating factor by statute. (730 ILCS 5/5—5—3.2(a)(11) (West 1992).) The defendant also had a prior felony conviction and was on probation at the time of the commission of this offense. The defendant received a sentence of 15 years when he was eligible for a sentence within a range of 6 to 30 years. (730 ILCS 5/5—8—1(a)(3) (West 1992).) When the sentence is within the applicable statutory provisions, the trial court is presumed to have properly imposed it (*People v. Krueger* (1994), 260 Ill. App. 3d 841, 849, 632 N.E.2d 177), particularly where the sentence in question is well within the statutory limits. (*People v. Abston* (1994), 263 Ill. App. 3d 665, 678.) We find that defendant's sentence was not an abuse of discretion.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

McNULTY and T. O'BRIEN, JJ., concur in part and specially concur in part.

JUSTICE McNULTY, specially concurring in section III:

The defense contends that the trial court committed reversible error by not excluding venireperson John Taylor for cause. It argues that the error is reversible because the defense was forced to use its last peremptory challenge to keep this potential juror from sitting on the jury. As the supreme court said, however, in 1887, "[w]e can not reverse [a] judgment for error committed in the lower court in overruling challenges for cause to jurors, even though [the] defendants exhausted their peremptory challenge unless it is further shown that an objectionable juror was forced upon them and sat upon the case after they had exhausted their peremptory challenges." *Spies v. People* (1887), 122 Ill. 1, 258, 12 N.E. 865, 989, accord *United States v. Tweed* (7th Cir. 1974), 503 F.2d 1127, 1129.

After the defense had exhausted its peremptories, eight ad-

ditional venirepersons were examined by the court. The following colloquy took place regarding venireperson John L. Theisinger:

"THE COURT: Do you want the card?

MR. HOWARD [assistant State's Attorney]: Yes.

THE COURT: Here's all of the cards.

MR. HOWARD: We would accept them.

THE COURT: Mr. Laurent [defense counsel].

MR. LAURENT: Judge, I'm out of peremptories. I have no choice. I formally requested more. You have already denied my motion.

THE COURT: Well, I'm asking if you have any challenges for cause.

MR. LAURENT: Let me take a good look. Unless he lives next door to the guy that sings in the church choir I will formally make a motion for cause, although he did answer the question correctly. Okay.

THE COURT: That motion for cause will be denied."

Whereupon Mr. Theisinger was sworn as the twelfth juror and two alternates were selected.

I do not reach the question of whether the trial court abused its discretion by refusing excused venireperson John Taylor for cause on the record before us. The defendant has made no showing that an "objectionable juror" was forced upon him after he exhausted his peremptory challenges to exclude venireperson Taylor. See *People v. Marts* (1994), 266 Ill. App. 3d 531, 540, 639 N.E.2d 1360, 1367; *People v. Washington* (1982), 104 Ill. App. 3d 386, 392, 432 N.E.2d 1020, 1024-25.

An "objectionable juror" has been defined as "a juror who should have been dismissed for cause—one who would prejudice the case." (*Flynn v. Edmonds* (1992), 236 Ill. App. 3d 770, 781-82, 602 N.E.2d 880, 887.) As the foregoing excerpt indicates, defense counsel made no showing whatever that juror Theisinger demonstrated any prejudice toward his client. Instead, he clearly indicated that his objection was *pro forma* to preserve the error for review and that the juror had answered the inquiries on the information card in a manner defense counsel found satisfactory.

As Justice Wolfson aptly said in *People v. Reid* (1995), 272 Ill. App. 3d 301, 309, 649 N.E.2d 593, 599, "[t]he defendant takes the position that an 'objectionable juror' is anyone she did not want on her jury. We do not agree. There must be some attempt to persuade the trial judge that a juror the defendant was required to accept could

not be fair and impartial. The failure to make such a showing forecloses further consideration of the issue. [Citation.]"

JUSTICE O'BRIEN concurs in the special concurrence.