THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JIMMIE PETERSON, Defendant-Appellant.

First District (1st Division)    No. 1—98—2362

Opinion filed December 27, 1999.

Calvin P. Sawyier and Paul N. Monnin, both of Winston & Strawn, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Mary L. Boland, and Linda Halperin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Defendant and the State enter into plea discussions, an agreement is reached, and defendant pleads guilty. During sentencing on the plea, defendant states he has been wrongly accused of the crimes. Does the trial court abuse its discretion when it revokes its acceptance of defendant's guilty plea based on his proclamation of innocence? Because acceptance of a guilty plea is within the sound discretion of the trial court and defendants possess no absolute right to have any guilty plea accepted, a trial court does not necessarily abuse its discretion in refusing to accept a guilty plea even where there is a factual basis for the plea. We additionally reject defendant's contentions that the trial court erred in failing to suppress the lineup identification and that trial counsel was ineffective for failing to request a substitution of judge. Accordingly, we affirm.

## BACKGROUND

Defendant, Jimmie Peterson, was charged with vehicular hijacking, robbery, and unlawful restraint. Because defendant does not contest the sufficiency of the evidence, only a brief recitation of the facts surrounding the incident of October 19, 1995, will be given. Additional facts are incorporated into our analysis where necessary.

Bernadette Allen testified that as she walked to her car in the Metra parking lot at 119th and Vincennes in Blue Island, an individual, whom she later identified as defendant, approached her and asked for money. She refused and after defendant persisted for a few minutes, he grabbed her, forced her to get her car keys, forced her to unlock her car door, and shoved her into her car. As Allen was opening the car door, defendant grabbed her purse.

Defendant eventually pushed Allen out of the passenger side door and drove off with her car and purse. Allen provided the Blue Island police with a description of the assailant, stating he was a black male, approximately 35 years old, 5 feet 10 inches tall with numerous pink curlers in his hair.

Although Allen stated it was very dark at the time of the incident, the lighting in the area was very good. She testified defendant was from 3 to 17 feet from her as he persisted in asking for money and even closer when they were in the car. She was able to get a very good view of him and she focused upon his face and hands. According to Allen, she was in the car with defendant for approximately five minutes before being pushed out.

Defendant's motion to suppress the lineup identification was denied. Prior to trial, defendant participated in a guilty plea conference at which time he agreed to plead guilty to vehicular hijacking and robbery in exchange for a sentence of eight years. However, at the time of sentencing, based on defendant's statements that he was wrongfully accused of the crimes, the trial court withdrew its acceptance of his guilty plea and ordered defendant to proceed to trial. The case was tried to a jury at which time defendant presented no evidence. Defendant was convicted of vehicular highjacking and robbery. Defendant's motion for a new trial was denied. Based upon all the evidence, the trial court sentenced defendant as a Class X offender to 18 years' imprisonment. Defendant's motion for reduction of sentence was denied.

## ANALYSIS

### I. Withdrawal of Acceptance of Guilty Plea

When defendant appeared in court in August of 1997, he sought a Rule 402 conference to pursue the option of a guilty plea. 177 Ill. 2d R. 402. After the conference, it was agreed that if defendant pled guilty to vehicular hijacking and robbery he would be sentenced to eight years and the unlawful restraint count would be nol-prossed. The court proceeded to admonish defendant pursuant to Rule 402. It read both charges after which defendant stated he understood them. Defendant was advised of the attendant sentences, including a potential 6- to 30-year sentence based on Class X status. He stated he understood these admonishments and desired to plead guilty. Defendant was then advised of all the rights he was waiving, which he stated he understood. Defendant denied any threats, force, or promises and stated he was pleading guilty of his own free will.

The parties stipulated to the factual basis for the guilty plea after the State summarized the evidence it would present. The court concluded that defendant was understandingly, knowingly, and voluntarily making the plea. Further, there was a sufficient factual basis for it.

After accepting defendant's guilty plea, the trial judge allowed defendant to speak. The following ensued:

"THE DEFENDANT: Yeah, well, Your Honor, Honorable Judge Wasilewski, in this present time of the case, I would like to say that I was wrongly accused of this crime.

THE COURT: Well, that's up to you. I'm willing to give you a trial.

THE DEFENDANT: What I was wrongfully accused of this crime, the seriousness of my physical condition, which when I was on the

street before I got arrested for this case, that I was trying for eleven days I was homeless, to get my medical together. And that the[ ] way I am now, I was not fit to make a crime of such force. But I'm pleading guilty on this case because I rather get myself situated, and if I do not survive this time, I would like to say to the Court that I was wrongfully accused. If I survive doing this time, I might pass away or anything. My mother—.

THE COURT: Well, you know, Mr. Peterson, I don't have to accept your plea of guilty.

THE DEFENDANT: I understand.

THE COURT: And I don't know how you expect me to accept it when you say something like that.

THE DEFENDANT: I understand, Your Honor. I understand. I'm a very sick man.

THE COURT: No, I won't accept the plea of guilty. Vacating the proceeding.

THE DEFENDANT: Your Honor Wasilewski, I accepted the pleading guilty. I signed the papers and everything.

THE COURT: You told me you're not doing this voluntarily. I'm vacating.

THE DEFENDANT: I didn't say I was not doing it voluntarily, Your Honor. I am doing it voluntarily on my own accord.
***
THE DEFENDANT: I'm pleading guilty on my own accord.
***
THE COURT: We'll set this for a jury trial. We'll pass it.

THE DEFENDANT: Your Honor?

THE COURT: I'm not accepting it.

THE DEFENDANT: Why?

THE COURT: Because you told me it's not voluntary."

Defendant appeared in court three times within the next three months. Defendant appeared in court on September 12. At this time, the trial judge stated, so the record was clear, "I entered a judgment the last date that the judgment of 8/27/97 is vacated. I didn't accept the plea of guilty." On October 3, nothing was mentioned concerning a guilty plea. On November 14, defendant's attorney advised the court, "Mr. Peterson indicated to me this morning that he does not wish to plea, your Honor. He would like a jury trial."

The issue of proclamation of innocence as it relates to guilty pleas was addressed by the United States Supreme Court in *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970). There, defendant never wavered that he wished to enter a guilty plea. However, he stated he was innocent and desired to enter a guilty plea only to avoid the death penalty. The Court held that even though de-

fendant maintained his innocence, the trial court could accept his guilty plea provided there was a sufficient factual basis for the plea. Nonetheless, the Court stated that this holding "[does] not mean that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead." *Alford*, 400 U.S. at 38 n.11, 27 L. Ed. 2d at 172 n.11, 91 S. Ct. at 168 n.11. The Court observed that states may, by statute or otherwise, choose to confer such a right on defendants. However, states could conversely bar their courts from accepting guilty pleas from a defendant who maintains his or her innocence. *Alford*, 400 U.S. at 38 n.11, 27 L. Ed. 2d at 172 n.11, 91 S. Ct. at 168 n.11.

■ Defendant acknowledges the general rule that it is within the discretion of the trial court to accept or reject a guilty plea. He maintains, however, that when a defendant is properly admonished and a factual basis for the plea exists, the trial court *must* accept a guilty plea even if defendant proclaims his innocence. He relies upon a passage from *People v. Ealey*, 36 Ill. App. 3d 32 (1975). In *Ealey*, defendant pled guilty and on appeal sought to challenge the guilty plea on the basis it was involuntary since he proclaimed his innocence. The court denied his request, stating:

> "If the trial judge explains the nature of the charge and makes certain that the defendant understands the nature of the charge, that he understands the consequences of his guilty plea, that the plea was voluntarily and understandingly made free of coercion, threats, or promises that cannot be fulfilled and then finds a further basis for connecting the defendant with a specific crime to which he has pled guilty, the guilty plea *must be accepted*. The fact that the defendant says he is innocent while pleading guilty does not invalidate a plea of guilty if the above conditions are met." (Emphasis added.) *Ealey*, 36 Ill. App. 3d at 35.

Defendant focuses upon three words in the entire opinion—must be accepted.

We, however, do not find *Ealey* persuasive. First, the statement is *dicta*. It was not necessary for resolution of the issues before the court. The issue in *Ealey* was not whether the court *must* accept a guilty plea, but whether the defendant's guilty plea should be vacated because of his protestations of innocence. We also note the aforementioned language from *Ealey* has never been followed and, in fact, has never been cited. Conversely, every other case to address the issue specifically holds or states that it is within the discretion of the trial court to accept or reject a guilty plea when innocence is proclaimed. See *People v. Barker*, 83 Ill. 2d 319, 333 (1980) (although defendant did not proclaim his innocence, court stated "a court *is not precluded*

from accepting a plea of guilty, in spite of a defendant's claim of innocence, if the record reflects a factual basis from which a jury could find the defendant guilty of the offense to which the plea was entered" (emphasis added)); *People v. Calva*, 256 Ill. App. 3d 865, 872 (1993) (although defendant did not proclaim his innocence, the court stated "[t]he trial court *can* accept a guilty plea where a factual basis exists, even where the defendant maintains he is innocent" (emphasis added)); *People v. Murphy*, 248 Ill. App. 3d 42, 47 (1993) (although defendant did not proclaim his innocence, court stated that a court *can* accept a guilty plea even from a defendant who proclaims his innocence as long as factual basis is established); *People v. Bleitner*, 199 Ill. App. 3d 146, 150-51 (1990) (trial court *may* accept a guilty plea even though defendant proclaims his innocence where the record reflects a factual basis for the plea; in this case there was a detailed factual basis and the trial court did not err in accepting defendant's plea despite his claim of innocence); *People v. Ottomanelli*, 153 Ill. App. 3d 565, 569-70 (1987) (see discussion below); *People v. Smith*, 113 Ill. App. 3d 917, 924-25 (1983) (although not an issue, court stated that trial court *may* accept guilty plea even though defendant claims innocence as long as plea is voluntary); *People v. Clearlee*, 101 Ill. App. 3d 16, 19 (1981) (where defendant stated he was innocent during trial court's admonishments on guilty plea, "[t]he trial court's refusal to accept a guilty plea was *** proper"; "A guilty plea *may* be rejected in an exercise of judicial discretion" (emphasis added)); *People v. Burgess*, 34 Ill. App. 3d 966, 969 (1975) (although not an issue, court stated in passing that trial court *can* accept guilty plea even if defendant claims innocence); *People v. Starks*, 30 Ill. App. 3d 541, 543 (1975) (same as *Burgess*); *People v. Lundeen*, 30 Ill. App. 3d 21, 25 (1975) (sufficient factual basis in record to establish trial court's acceptance of the guilty plea did not deny defendant due process even though defendant proclaimed innocence); *People v. Morgan*, 14 Ill. App. 3d 232, 234 n.1 (1973) (court's outright refusal to accept guilty plea any time a defendant proclaimed his innocence was proper; "It is well established that a court *is not obliged* to accept a plea of guilty and *may* reject such a plea in the exercise of sound judicial discretion" (emphasis added)), *aff'd*, 59 Ill. 2d 276, 281 (1974).

Although the language from some of these cases is *dicta* and none of the cases involve the revocation of an acceptance of a guilty plea, we nonetheless find them instructive. Of particular significance is *Ottomanelli*. There, the trial court refused to accept defendant's tendered guilty plea, stating it would not allow anyone to plead guilty who says he is not guilty. No effort was ever made to establish a factual basis and, therefore, we found the trial court's refusal to accept the guilty

plea proper. *Ottomanelli*, 153 Ill. App. 3d at 570. However, we also made the following statements:

"A criminal defendant who asserts his innocence *does not have an absolute right* that his guilty plea be accepted by the court, yet, where there is a strong factual basis showing a defendant's guilt, a court *may* accept such a plea without constitutional error." (Emphasis added.) *Ottomanelli*, 153 Ill. App. 3d at 569.

Additionally:

"It has *** been held that a court *is not obliged* to accept a plea of guilty from a defendant who professes innocence. [Citation.] *There is no statutory right in Illinois to plead guilty in such circumstances,* and Supreme Court Rule 402, which governs pleas of guilty, confers no authority upon a trial court to accept a plea of guilty absent a factual basis for it shown in the record." (Emphasis added.) *Ottomanelli*, 153 Ill. App. 3d at 570.

Even the dissent in *Ottomanelli*, although finding the trial court abused its discretion since it refused outright to consider the guilty plea without further investigation into a factual basis, confirmed that acceptance of such a plea is discretionary, not mandatory:

"If the defendant persists in the desire to plead guilty, but fails or refuses to admit that he committed the crime or professed his innocence, the plea *may* be accepted if a factual basis is otherwise demonstrated." (Emphasis added.) *Ottomanelli*, 153 Ill. App. 3d at 572 (Hopf, J., dissenting).

Thus, although the trial court may accept a plea from a defendant who maintains his innocence, it is not required to do so in all instances.

■ Case law is clear that it is within the sound discretion of the trial court whether to accept or reject a guilty plea. *Santobello v. New York*, 404 U.S. 257, 262, 30 L. Ed. 2d 427, 433, 92 S. Ct. 495, 498 (1971); *People v. Fernetti*, 117 Ill. App. 3d 44, 52 (1983), *rev'd on other grounds*, 104 Ill. 2d 19 (1984); *People v. Boyd*, 66 Ill. App. 3d 582, 588 (1978); *People v. Morgan*, 14 Ill. App. 3d 232, 234 n.1 (1973). We review the trial court's decision for an abuse of discretion and will not substitute our judgment for that of the trial court. When no reasonable person would agree with the decision, an abuse of discretion exists. *Chesler v. People*, 309 Ill. App. 3d 145, 153 (1999). When the decision is arbitrary, it amounts to an abuse of discretion. *Chesler*, 309 Ill. App. 3d at 153. It has also been said that a decision is an abuse of discretion when it is not based on facts, logic, or reason but is arbitrary, unreasonable, or unconscionable. 5 Am. Jur. 2d *Appellate Review* § 695 (1995). An abuse of discretion has also been found when, after weighing all the relevant evidence and facts, one can definitely and firmly conclude that the trial court committed a clear error of judgment in

reaching its conclusions. 5 Am. Jur. 2d *Appellate Review* § 695 (1995). Conversely, the trial court properly exercises its discretion when it examines the relevant facts, applies proper legal standards, and reaches a reasonable conclusion. 5 Am. Jur. 2d *Appellate Review* § 695 (Supp. 1999).

■ Based on all the facts present in this case, we do not find the trial court abused its discretion. During defendant's conversation with the court, defendant repeated three times that he was "wrongly accused" of the crimes. Following this court date, defendant returned to court on three occasions within three months. He never again brought up the matter of entering a guilty plea to the court's attention. When the court itself raised the issue on the next court date, defendant did *not attempt to persuade the court to reconsider.* More importantly, on one occasion, defendant's counsel indicated that defendant stated he did not want to plead guilty but wanted a jury trial.

Finally, and perhaps most pivotal, is the fact defendant repeatedly stated he was a sick man, was seriously ill, and was in need of health care. He specifically stated he was trying to get his "medical together" and that "[he was] pleading guilty on this case because [he] rather get [him]self situated." Defendant was clearly informing the trial court he wanted medical help and was pleading guilty for that reason. This alone was a reasonable and rational basis for the trial court to revoke its acceptance of defendant's guilty plea. See *Fernetti*, 117 Ill. App. 3d at 52 (no abuse in refusing to accept defendant's guilty plea where based on desire to bar further prosecutions for offenses the State believed it had against defendant).

In light of the above factors, we cannot say the trial court abused its discretion in revoking acceptance of defendant's guilty plea.

## II. Motion to Suppress

Defendant next contends that the trial court erred in denying his motion to suppress the lineup identification. Defendant contends the lineup was impermissibly suggestive because he was the only individual with a unique hairstyle, long hair, and he was the only individual wearing a gray sweatshirt, an item that matched the description given by the victim. With regard to his hair, he contends there is no evidence the baseball cap adequately concealed it. With regard to the sweatshirt, he contends the police could easily have given him something else to wear. Defendant urges us to review this issue under the plain error doctrine since it was not included in his posttrial motion.

Defendant filed a motion to suppress the lineup identification, arguing the lineup was impermissibly suggestive. The victim, Bernadette Allen, testified that approximately 12 hours after the incident

she was contacted by the police. She went to the police station where she went over the details again and observed a lineup. When asked whether there was anything unusual about the lineup, Allen stated each participant was wearing a baseball cap. She testified that each individual stepped forward and she recognized defendant. She stated she examined each of the six participants thoroughly. However, because she wanted to be absolutely certain she identified the correct individual, she asked to see each again. After a second viewing, she again recognized defendant. Allen testified that she did not know how many individuals in the lineup had long hair because each man was wearing a baseball cap. Further, no one in the lineup had pink curlers in his hair.

Detective Hoglund testified that he and his partner, Detective Thomas Morey, were in charge of the lineup. Six men were placed in the lineup. He admitted that no one other than defendant had long hair, nor did anyone resemble defendant—all were different. However, all were about the same height, were physically similar, and all wore baseball caps. According to Hoglund, because defendant had unique hair, each member of the lineup was given a baseball cap to wear. The cap was intended to hide defendant's hair. Hoglund stated that defendant tucked his hair under the cap. Hoglund further testified that all of the participants were wearing different types of shirts and different colored pants.

Hoglund denied remembering Allen's description of the perpetrator, except that he had pink curlers in his hair. He reviewed the police report to refresh his memory. Based on his refreshed memory, Hoglund stated Allen gave a description of a black male, 30 to 35 years old, 5 feet 10 inches to 6 feet tall, 200 to 210 pounds, black hair, brown eyes, pink curlers in hair, gray sweatshirt, and brown pants.

Officer Morey also testified. He admitted each participant had short hair except defendant and that no one but defendant wore a sweatshirt. Morey stated he was aware of the hair issue and, thus, gave each participant a baseball cap to wear to cover up the type of hair each had. He stated each participant was instructed to wear the cap backwards. According to Morey, defendant's hair was entirely covered.

Morey further stated he spoke to Allen prior to the lineup. He gave her his standard pre-lineup "spiel" and told her to look at each subject individually. He did not tell her that a person who fit her description was in the lineup. He told her to take as much time as she liked, told her to view all the individuals before making any decision, and said nothing nor made any gestures as each participant stepped forward.

Morey, too, could not remember the original description of the suspect given by Allen and could only do so after refreshing his memory with the police report. The description was the same as that provided by Hoglund.

Apparently, two photographs of the full lineup were entered into evidence. Although neither is present in the record, the record does disclose that one photo showed the participants with the baseball caps on and the other showed them without the caps, thus exposing defendant's long hair.

After receiving the above evidence, the trial judge first noted that the lineup photographs were "virtually worthless" and that he could not make anything out on them. However, he did state he could see that all individuals were wearing caps and they were roughly the same height. He agreed that an unusual situation was presented. According to him, when the police are faced with something strange, such as defendant's unique hairstyle, they have to improvise. Although he noted it would have been better if defendant had not worn a gray sweatshirt, he believed that if the police wanted a positive identification they would have put defendant in the lineup without attempting to disguise his hair. Based on this, the judge believed the police made a good-faith effort to provide a fair lineup and concluded that the matters brought to his attention would go to the weight of the identification.

As noted above, the photographs of the lineup are not included in the record. However, as both parties agree, it is not necessary to produce the photographs to prove or disprove suggestiveness. *People v. Hartzol*, 222 Ill. App. 3d 631, 642 (1991). Moreover, based on the trial court's comments, the photographs were, and would be, of little value.

■ The determination of whether a pretrial identification "is ' "so unnecessarily suggestive and conducive to irreparable mistaken identification that [defendant] [is] denied due process *** depends on the totality of the circumstances surrounding it." ' [Citations.]" *People v. Simpson*, 172 Ill. 2d 117, 140 (1996); see also *Neil v. Biggers*, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972). An identification should be suppressed when it is so unnecessarily suggestive that there is a substantial likelihood of misidentification. *Hartzol*, 222 Ill. App. 3d at 642. Defendant bears the burden of showing impermissible suggestiveness. *Simpson*, 172 Ill. 2d at 140; *People v. Richardson*, 123 Ill. 2d 322, 348 (1988). The admissibility of evidence rests within the sound discretion of the trial court, and we will not disturb its ruling on review absent an abuse of discretion. *People v. Bragg*, 277 Ill. App. 3d 468, 474 (1995).

All members of a lineup need not be physically identical. *Simpson*,

172 Ill. 2d at 140; *Richardson*, 123 Ill. 2d at 350; *People v. Kelley*, 304 Ill. App. 3d 628, 637-38 (1999); *Bragg*, 277 Ill. App. 3d at 474. And, the police are not required to find matching clothing for all participants. *Bragg*, 277 Ill. App. 3d at 474. Any differences in appearance go to the weight of the identification, not to its admissibility. *Kelley*, 304 Ill. App. 3d at 638; *People v. Johnson*, 222 Ill. App. 3d 1, 7-8 (1991); *People v. Trass*, 136 Ill. App. 3d 455, 463 (1985).

■ In the instant case, we initially note Allen did not give an identification to the police that included long hair. In her description, Allen only stated the suspect had pink rollers in his hair. Moreover, defendant's hair was covered by the baseball cap. Assuming, *arguendo*, that some long hair was visible, there is ample case law to contradict defendant's position. See *Simpson*, 172 Ill. 2d at 140 (fact that defendant's curls were larger than any other participants' curls did not render lineup so suggestive where general physical features of all participants were similar); *Kelley*, 304 Ill. App. 3d at 637-38 (defendant's hairstyle in lineups, french braids and afro (which defendant argued led to the inference that his hair was the only hair that could be braided) was not so distinctive as to render lineup unduly suggestive); *Hartzol*, 222 Ill. App. 3d at 642-43 (defendant was only participant in lineup with braids, court stated " 'the fact that a defendant is the only participant in the lineup with braided hair does not render it impermissibly suggestive where defendant is not forced to wear his hair in braids and there are no other significant physical or racial differences among the participants.' [Citations.]"; see also *People v. Washington*, 182 Ill. App. 3d 168, 175 (1989) (same quotation from *Hartzol* and defendant only individual in lineup wearing braids); *Trass*, 136 Ill. App. 3d at 463 (same quotation from *Hartzol* and defendant only individual in lineup with braids); *People v. Johnson*, 104 Ill. App. 3d 572, 578 (1982) (court stated that "substantial differences in age and appearance between suspects and others exhibited in a lineup do not in themselves establish that a lineup was unnecessarily suggestive," such matters go to the credibility of the identification; lineup not unduly suggestive where defendant was only individual in lineup with braids and beard); *People v. Tucker*, 118 Ill. App. 2d 136, 140 (1969) (lineup not impermissibly suggestive where defendant only participant with red hair).

Similarly, there is ample authority to conclude that even though defendant was the only individual wearing an otherwise unremarkable gray sweatshirt, the lineup was not unduly suggestive. See *Bragg*, 277 Ill. App. 3d at 474 (even though defendant's clothes in lineup matched description given by witnesses, lineup not rendered unduly suggestive); *Johnson*, 222 Ill. App. 3d at 7-8 (where defendant was only indi-

vidual in lineup to wear red pants, which were similar to those worn by the suspect as described by the victim, lineup not impermissibly suggestive because all participants were of similar age, weight, height, and all wore causal or informal clothing); *People v. Coleman*, 203 Ill. App. 3d 83, 91-92 (1990) (where victim described suspect as wearing a dark shirt and defendant was the only individual in lineup wearing a black shirt, the lineup was nonetheless not impermissibly suggestive or prejudicial to taint the identification); *People v. Clark*, 124 Ill. App. 3d 14, 26 (1984) (fact that defendant was only individual in lineup wearing grey or silver jacket was not so distinctive or suggestive); *People v. Hamilton*, 54 Ill. App. 3d 215, 218 (1977) (even though clothing defendant wore during lineup was similar to clothing described by victim, lineup was not unduly suggestive); *People v. Therriault*, 42 Ill. App. 3d 876, 884 (1976) (victim's description of attacker as wearing cardigan and fact defendant was only man in lineup wearing cardigan did not render lineup so suggestive where men were all similar in height, weight, and hair color; police did not coerce defendant into wearing cardigan, it was simply the apparel he was wearing upon his arrest; further, description given by victim included age, race, height, build, hair color, facial features, as well as clothing); *People v. McMorris*, 17 Ill. App. 3d 364, 367 (1974) (fact defendant was only individual in lineup wearing a jacket with a metallic buckle and victim had described suspect as wearing some "metallic object" near the waist did not render lineup unduly suggestive where victim identified suspect by distinctive voice).

Taking the totality of the circumstances, the lineup simply was not unduly suggestive.

### III. Substitution of Judge

Defendant's final contention is that trial counsel was ineffective for failing to move for automatic substitution of judge under section 114—5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114—5(a) (West 1998)). According to defendant, if counsel had filed such a motion, defendant would have received a new judge as a matter of right. Defendant contends he was prejudiced because he was deprived of the opportunity of being tried and sentenced by a judge "less immediately familiar with [his] criminal history" and who had no prior experience with him. Instead, he was tried and sentenced, as a Class X offender, by a judge who previously tried and sentenced him for a similar felony offense.

Defendant's counsel filed a motion for substitution of judges. The motion did not state the basis or recite a statutory section. The matter was to be heard on January 4, 1996, but was continued. However, on

that date, counsel stated the motion was based on cause, in particular, that Judge Wasilewski had previously convicted defendant of armed robbery and sentenced him in 1993. The motion was later withdrawn on March 21 with no reason for the withdrawal given.

■ To sustain a claim of ineffective assistance of counsel, "[d]efendant would have to demonstrate a reasonable probability that his counsel's alleged deficiencies affected the outcome of the trial." *People v. Levin*, 207 Ill. App. 3d 923, 935 (1991), *aff'd in part & vacated in part on other grounds*, 157 Ill. 2d 138 (1993). We need not address counsel's deficiency before evaluating the prejudice prong of the *Strickland* test (*Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984)). *People v. Brown*, 185 Ill. 2d 229, 255 (1998).

■ In *People v. Vance*, 76 Ill. 2d 171 (1979), the Illinois Supreme Court addressed the issue of the same judge presiding at a subsequent trial. There, defendant sought to substitute the judge for cause where the same judge had previously presided at defendant's drug delivery trial in which defendant was ultimately sentenced. The supreme court found no error in denial of the motion. "It is clear that ordinarily the fact that a judge has ruled adversely to a defendant in either a civil or a criminal case does not disqualify that judge from sitting in subsequent civil or criminal cases in which the same person is a party." *Vance*, 76 Ill. 2d at 178. "To hold otherwise would unnecessarily complicate the trial of remanded cases and recidivists, for a judge would be limited to a single trial of defendants convicted before him." *Vance*, 76 Ill. 2d at 181. "Something more than presiding at an earlier conviction *** is necessary before a judge may be considered disqualified from hearing subsequent cases involving the same defendant." *Vance*, 76 Ill. 2d at 181. Thus, the general rule in Illinois is that, to be entitled to substitution of judge, defendant must show "more than the fact that the judge convicted the defendant in a previous case." *People v. Berry*, 241 Ill. App. 3d 993, 997 (1993); see also *People v. Hope*, 137 Ill. 2d 430, 475 (1990); *People v. Taylor*, 101 Ill. 2d 508, 518 (1984); *People v. Harris*, 220 Ill. App. 3d 848, 859 (1991); *People v. Moore*, 199 Ill. App. 3d 747, 768 (1990); *People v. Enoch*, 189 Ill. App. 3d 535, 546 (1989); *People v. Matlock*, 97 Ill. App. 3d 842, 844 (1981); *People v. Campbell*, 28 Ill. App. 3d 480, 487 (1975). Similarly, "[a] trial judge is under no duty to recuse himself [even from a bench trial] *** because he presided at a prior trial of the defendant." *People v. Neumann*, 148 Ill. App. 3d 362, 369 (1986); see also *People v. Massarella*, 80 Ill. App. 3d 552, 565 (1979).

Although the above cases involve substitution for cause, a recent third district case addresses automatic substitution. In *People v. Ja-*

*cobs*, 308 Ill. App. 3d 988 (1999), defendant contended that trial counsel was ineffective for failing to file a motion for automatic substitution of judge where the trial judge had previously tried defendant on a different matter. The court concluded that defendant was not prejudiced by counsel's failure to request a substitution of judge, particularly because the ultimate determination in the case against defendant was based upon his credibility and any other judge would face the same credibility issues. In conclusion, the court stated, "[u]nder the circumstances of this case, we cannot say that a reasonable probability exists that a different judge would have reached a different conclusion. Additionally, we note that a judge is not disqualified from hearing a case merely because he presided over a previous case involving the same defendant." *Jacobs*, 308 Ill. App. 3d at 994.

■ While it is true defendant need not establish actual prejudice under the automatic substitution provision, he must at least allege "that the judge is so prejudiced that the defendant cannot receive a fair trial." *People v. Hawk*, 93 Ill. App. 3d 175, 178 (1981). See also 725 ILCS 5/114—5(a) (West 1998) ("Within 10 days *** the defendant may move the court in writing for a substitution of that judge on the ground that such judge is so prejudiced against him that he cannot receive a fair trial"). Defendant did not do that here. His motion for substitution of judge is silent as to the reason as well as to which provision it is being brought under.

More importantly, however, defendant has failed to demonstrate prejudice. While defendant cites to *People v. Ryan*, 264 Ill. App. 3d 1 (1994), for the proposition that prejudice is "essentially" presumed in a motion for automatic substitution of judge, prejudice is not presumed for purposes of an ineffective assistance of counsel claim. While defendant argues he was prejudiced by the fact the same judge tried and sentenced him who had tried and sentenced him on a similar offense, he does not allege how the outcome of his case would be different.

The alleged prejudicial information known to the trial judge concerned defendant's past conviction for a similar felony. Any judge would have learned this information at the time of sentencing. The State presented, via live testimony in aggravation, the facts surrounding the prior incident. There is no evidence the trial judge in the instant case relied on any additional facts gleaned from the prior proceeding.

At the time the trial judge accepted defendant's guilty plea, he was aware of defendant's background and prior offense. He was nonetheless willing to accept the State's recommendation of an eight-year sentence. This is very near the minimum sentence even under the Class X sentencing scheme. Defendant does not contend and cannot

demonstrate that the trial judge was prejudiced when he accepted the plea.

Further, there is no evidence the trial judge learned of defendant's background and prior offense after accepting the guilty plea and, then, for that reason vacated his acceptance. Similarly, there is no evidence the judge vacated his acceptance of defendant's guilty plea based on any facts of the prior case or its outcome. Indeed, the record clearly demonstrates that the trial judge's vacatur was based solely upon defendant's proclamations that he was wrongly accused of the crimes. Thus, defendant cannot demonstrate he was prejudiced by the withdrawal of acceptance of his guilty plea.

Defendant does not challenge the jury verdict finding him guilty and, therefore, cannot demonstrate prejudice based on that. Finally, defendant does not challenge the 18-year sentence as erroneous or excessive. Although we do note defendant's sentence was increased by 10 years, trial courts have the right to impose a greater sentence after trial than at the time of a guilty plea. See *People v. Jackson*, 299 Ill. App. 3d 104, 115 (1998) (relying on *Alabama v. Smith*, 490 U.S. 794, 801, 104 L. Ed. 2d 865, 874, 109 S. Ct. 2201, 2206 (1989), where court explained reasons for allowing greater sentence following trial including fact that guilty pleas may justify leniency, the trial judge may obtain greater sentencing information after trial than what was available at the time of a guilty plea, the trial judge may gather a greater appreciation of the nature and extent of the crime during a trial, and the trial judge may gain insight into defendant's moral character and suitability for rehabilitation based on his or her conduct during trial). See also *People v. Davis*, 93 Ill. App. 3d 187, 195 (1981). In this case, the trial judge stated: "[O]bviously I heard a lot more—we had conferenced this case, and I heard a lot more than I heard during the course of that conference as to exactly how this incident came down. It is much more serious than I originally envisioned it ***."

Accordingly, we conclude that defendant has not, and cannot, establish prejudice. Therefore, defendant's ineffective assistance claim is without merit.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the circuit court of Cook County.

Affirmed.

O'MARA FROSSARD, P.J., and TULLY, J., concur.