THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT STONE *et al.*, Defendants-Appellants.

First District (2nd Division)   Nos. 1—91—4112, 1—91—4120 cons.

Opinion filed March 30, 1993.—Rehearing denied May 28, 1993.

882

Charles E. Pinkston, of Chicago (Ronald A. Bobbitt, Burgess F. Ervin, and Milton S. Travis, Jr., of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Laura L. Morrison, and William M. Traynor, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendants, Robert and Gloria Stone, appeal their jury convictions, seeking reversal or, alternatively, reversal and remandment for a new trial. Robert was convicted of possession with intent to deliver a controlled substance (Ill. Rev. Stat. 1989, ch. 56½, par. 1401 (section 401)), and possession of a controlled substance (Ill. Rev. Stat. 1989, ch. 56½, par. 1402 (section 402)). Gloria was convicted of possession with intent to deliver a controlled substance (section 401), and two counts of possession of a controlled substance (section 402). They raise as issues whether (1) denial of their motion to suppress evidence and quash arrest violated their constitutional rights; (2) evidence presented by the State was sufficient to convict either of them; (3) the circuit court's reversal of its ruling granting a motion *in limine* violated their rights to fair trials; (4) the court's denial of their motion for a mistrial denied their rights to fair trials; and (5) alleged cumulative errors resulted in a deprivation of their rights to fair trials.

At a hearing on defendants' motion to quash arrest and suppress evidence, Maywood police officer Robert Novak testified that on March 19, 1990, at approximately 8:30 p.m., he received a radio report of shots fired at 2028 South 3rd Ave. from a dark-colored vehicle bearing Indiana license plates. He arrived at that location two min-

utes later and observed a dark blue or black Buick Riviera with Indiana license plates, numbered 98 D 9860, parked a quarter block to the south of the address given. Officer Novak pulled behind it, exited his vehicle with his weapon drawn, and observed Gloria standing at the passenger side of the vehicle. Robert, her husband, was in the driver's seat and her brother-in-law, Dennis Stone, was seated in the backseat on the passenger side of the vehicle.

Officer Novak instructed Gloria to step to the rear of the vehicle and to place her hands on the trunk. He then instructed Dennis to exit the vehicle, come to the rear of the vehicle and place his hands on the trunk. At this point, Maywood police officer Lawrence Jackson arrived and instructed Robert to exit the vehicle, which he did. Officer Novak performed a protective pat down on Dennis, searching for weapons. He tried to take Gloria's purse for inspection. She struggled and asked him why. He stated that it was for officer's safety and to search for any weapons. He observed that the purse was heavy and asked what it contained. At that moment a gunshot and a woman's scream were heard coming from 2028 South 3rd Ave. Gloria jumped up and down and told the police officers that "[t]hey're going to try to kill her again," referring to the "lady at 2028" South 3rd Ave.

Jackson called for police backup and proceeded toward the sound of the gunshot. Officer Novak put Gloria's purse on the trunk lid and proceeded in his squad car to back up Jackson. As he looked back, he saw Gloria and the others walking toward a house at 2039 South 3rd Ave. Upon arrival at 2028, Officer Novak met with a "female white" named Patricia, who told him that the three individuals he was just talking with were involved in the original shooting. Officer Novak ran back to the corner, where he observed all three subjects now walking from the backyard of 2039 South 3rd Ave. toward their car. Gloria was again in possession of her purse. He asked Gloria for her purse anew. Now she was very cooperative. All three individuals put their hands on the car at his direction. Officer Novak searched the purse and recovered a small clear plastic bag containing a white powdery substance, later determined to be 1.5 grams of cocaine. Gloria was placed under arrest and sat in one of the squad cars.

Following the search of Gloria's purse, he went to the rear patio area at 2039 South 3rd Ave. and, from underneath a bush, recovered two loaded .38 revolvers, an unloaded .32 revolver, a bag of cocaine, and a bag of cannabis. The caliber and manufacturer of the weapons matched that of the live rounds later found in the trunk of the car.

The Stone vehicle was searched for weapons or other contraband. Ten .38-caliber special rounds of ammunition were found in the armrest compartment.

The other two subjects were seated in different squad cars. Neither Robert nor Dennis was placed under arrest until later, "[u]pon the arrival of additional units," following Officer Novak's recovery of contraband. Officer Novak testified that any time the department gets a call of shots fired and gets a description of the vehicle or gets a call and finds narcotics, the police do a preliminary search and tow the vehicle to the station for a more thorough search of the vehicle. At the police station, to which the Stone vehicle was later removed, police recovered from the glove compartment a blue "Crown Royal" bag containing $10,420, and a clear plastic bag containing 26.2 grams of cocaine. Also, found in the trunk was a Nordek 7.62 automatic assault rifle fully loaded with 30 rounds of ammunition, an additional 18 rounds, two clips containing nine rounds each and a box of "32 special" ammunition.

On cross-examination, Officer Novak testified that he did not see any defendants engaged in illegal conduct when he first came upon them. After hearing the gunshot, he was at 2028 South 3rd Ave. for two to three minutes before returning to defendants. Officer Novak did not know Patricia's last name and had no arrest warrant for either defendant.

Maywood police officer Harold Jenkins testified that both defendants signed written consent forms, to search the automobile, at the police station.

The circuit court denied the motion as to both defendants. Further, the court granted a defense motion *in limine* precluding the mentioning at trial of the items recovered from behind the house at 2039.

At trial, Officer Novak substantially tracked the same events as in his testimony given at the suppression hearing. He added that Gloria's purse was lighter when he took it the second time; defendants lived in Indianapolis, Indiana; he never found a key to the car's glove compartment or trunk and therefore was unable to search those areas while it was on the street; and when he first got Gloria's purse, he thought it possibly contained a weapon.

The circuit court informed the attorneys of a note that was received from a juror which asked "[d]id anyone search the area of 2039 where Officer Novak saw the defendants come from?" The court stated that it would be necessary to reverse itself on defendants' *in limine* order, recounting that defense counsel for Robert, in his open-

ing statement and his consistent cross-examination of Officer Novak, implied that the officer never observed Robert doing anything illegal. The court stated that it would be prejudicial to defendants just to admonish the jury that there was a prior ruling finding that defendants' arrest was legal, and would now permit the jury to learn of the additional contraband found nearby. The court admonished the jury that other witnesses in the case would testify and to wait and listen to further evidence. Officer Novak was then recalled by the State and testified as to the items found at the rear of 2039 South 3rd Ave., as earlier described.

Maywood police officer Anthony Winburn testified that on May 11, 1990, he interviewed Gloria at the Maywood police station. After being read her *Miranda* warnings, she told him that the 1983 Buick Riviera was a gift given to her by Robert. Gloria told him that she and Robert came to Maywood because they were cheated out of some money and they were going to get it back from a person who lived near 3rd and Fillmore. Officer Winburn added that following the giving of *Miranda* warnings, Robert told him that he had bought the Riviera and had given it to Gloria as a gift.

Officer Winburn testified that Gloria was present when the police officers searched the trunk and that she stated, prior to his opening of the trunk, that it contained a weapon. Found in the trunk was a box containing an AK47 assault rifle; two magazines for the rifle with 30 rounds each; three separate clips with about 10, 9 and 9 rounds, respectively; a box of .32-caliber rounds; an Indiana certificate of title for the 1983 Buick in Robert's name; and two checks with Gloria's name on them.

Officer Winburn added that he opened the glove compartment with Gloria present where he observed a blue velvet Seagram's Crown Royal bag containing $10,420 as well as a clear plastic bag containing approximately 25 to 30 grams of a white powdery substance. Both defendants told Officer Winburn that the money was from a settlement. Gloria more specifically said that it belonged to her mother.

Officer Winburn testified that he received yearly narcotics training for the last 5 to 10 years from the Federal Bureau of Investigation, the Illinois State Police and the Multi-Regional Training Authority. The street value of 25 to 30 grams of cocaine was $2,500 to $8,000, when cut with Manitol. He averred that someone selling drugs would be in possession of this amount. Drug dealers typically carry a large amount of drugs, currency and weapons.

Illinois State Police Bureau of Forensic Science senior chemist Sarah Pethokoukis testified that the white substance found in Gloria's purse weighed 1.5 grams and the substance in the glove compartment weighed 25.1 grams. Both substances tested positive for cocaine.

The parties then stipulated to the chain of custody.

Defendants' motions for directed verdicts at the close of the State's evidence were denied. Defendants offered no evidence. They were convicted and sentenced as first mentioned.

## I

Defendants contend that the denial of their motion to suppress evidence and quash arrest violated their constitutional rights against unreasonable searches and seizures because (1) the evidence obtained from the search and seizure of Gloria's purse should have been suppressed and her arrest quashed; (2) Robert's arrest was improper; and (3) evidence seized from the vehicle should have been suppressed.

## A

Initially, defendants argue that the search and seizure of the contents of Gloria's purse should have been suppressed and her arrest quashed. They suggest that the officer did not believe she concealed a gun in her purse because he left the purse on the trunk, turned his back on the suspects, and uttered a simple command not to leave. They assert that nothing connected Gloria with the dispatch received of shots having been fired from a dark-colored vehicle with Indiana license plates; there was no warrant to search or seize, no consent, no proper search incident to an arrest; and there was no probable cause with exigent circumstances. Gloria's arrest, therefore, was based upon an allegedly unlawful search and seizure and should have been quashed.

■ The evidence reveals, however, that Officer Novak first approached the Indiana vehicle with his gun drawn, believing that the occupants were armed and dangerous. When he struggled with Gloria over possession of her purse and then held it, the purse felt heavy. At the moment he was about to check its contents, a gunshot went off. Significantly, Gloria spontaneously told the officers "[t]hey were going to try to kill her again," naming "the lady at 2028," apparently having some knowledge of the previous shots fired, that a woman was involved, and where the woman would be found. When the gunshot rang out, Officer Novak put Gloria's purse on the trunk of their automobile and told the three suspects to wait at their car. He then went to investigate the shot and, as he did so, saw the three individuals

leave the car area and walk toward a house at 2039 South 3rd Ave., disregarding his instructions. After his conversation with Patricia at 2028 South 3rd Ave., who told him that the three persons he was just with were involved in the first shooting, Officer Novak ran back toward the three, who by this time were in the rear patio area of 2039. Gloria was again carrying her purse. Under this state of the record, Officer Novak clearly had probable cause to search Gloria's purse for weapons, during which time he found the package which he suspected was cocaine. Her arrest was proper.

## B

Next, defendants aver that Robert's arrest was improper, claiming the record is devoid of any evidence suggesting that Robert was engaged in an illegal act prior to his arrest. Defendants maintain that there was no probable cause particularized as to Robert even assuming, *arguendo*, that probable cause existed as to Gloria. (*Ybarra v. Illinois* (1979), 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338.) Defendants add that the contraband in the car's armrest was found after Robert's arrest and, therefore, could not be a basis for his arrest.

■ Here, too, the record demonstrates probable cause to arrest Robert. When first observed, he was seated in a vehicle which bore a resemblance to the police dispatch description and was in the vicinity of where the shots were reportedly fired. In addition, Patricia told Officer Novak that defendants were involved in the first shooting, which corroborated the earlier radio dispatch of shots being fired from a dark-colored vehicle bearing Indiana license plates at 2028 South 3rd Ave. This also was an additional indicia of reliability supporting Patricia's assertion of their involvement.

A court's finding of probable cause will not be overturned on appeal unless it is manifestly erroneous. (*People v. Reynolds* (1983), 94 Ill. 2d 160, 165, 445 N.E.2d 766.) Since the arrest of Robert was without a warrant, it was valid only if supported by probable cause. (*People v. Montgomery* (1986), 112 Ill. 2d 517, 525, 494 N.E.2d 475.) Probable cause exists if the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. (*People v. Moody* (1983), 94 Ill. 2d 1, 7, 445 N.E.2d 275.) Information received by the police from third parties, such as Patricia in this case, must be justified by some indicia of reliability in order to establish probable cause. (*People v. Morris* (1992), 229 Ill. App. 3d 144, 158, 593 N.E.2d 932.) The central issue is not the rigid classification of the informant as an ordinary cit-

izen or a paid informant but, rather, whether the information, taken in its totality, and interpreted not by technical legal rules but by factual and practical commonsense considerations, would lead a reasonable and prudent person to believe that the person stopped had committed an offense. (*People v. Adams* (1989), 131 Ill. 2d 387, 396-97, 546 N.E.2d 561.) The information received by police from the radio dispatch, reporting shots fired from a vehicle bearing a resemblance to the Stone vehicle, which was found in the vicinity of where it was reported to be, was corroborated by Patricia. The totality of these facts and circumstances alone, known to the police, supports the circuit court's finding of probable cause to arrest Robert.

Assuming, *arguendo*, that the foregoing was insufficient support for probable cause, the evidence permits the inference that Robert was arrested subsequent to the first search of the vehicle. He was not placed under arrest or handcuffed, but merely complied with the police request to sit in the squad car. Robert's and Gloria's movement to 2039 South 3rd Ave., after being told to stay at their vehicle, and the search of the backyard produced additional evidence which added to probable cause to arrest Robert. According to Officer Novak, Robert was not arrested until the "arrival of additional units."

### C

■ Under the facts previously set forth, Officer Novak had the right to search the vehicle for weapons where, as here, he had reason to believe that he was dealing with armed and dangerous individuals. A search warrant need not be obtained when police have probable cause to believe that the vehicle was used in or contains evidence of a crime. (*People v. Binder* (1989), 180 Ill. App. 3d 624, 627, 536 N.E.2d 218.) Both defendants signed consent to search forms with respect to their vehicle, rendering legal the subsequent seizure of the contraband in the automobile trunk.

We find no error.

### II

Defendants contend that the State's evidence was insufficient to convict them of controlled substance possession with intent to deliver because the State improperly was allowed to use a police officer as its expert in establishing intent to deliver; the finding of possession with intent to deliver, therefore, was manifestly erroneous in the absence of delivery and inference of intent.

## A

Officer Winburn, who received extensive training in narcotics investigations, as detailed above, estimated the street value of the subject cocaine to be between $2,500 and $8,000, depending upon whether a cutting agent would be used; that the amount of cocaine found in the Stones' vehicle exceeded that usually possessed for personal use; that someone selling drugs would possess such an amount; and that drug dealers typically carry a large amount of drugs, currency and weapons.

Although extensive testimony by a police officer as to habits of drug sellers may cause prejudice to defendants and deprive them of fair trials (*People v. Brown* (1992), 232 Ill. App. 3d 885, 598 N.E.2d 948), defendants waived this argument because it was not presented in their post-trial motions. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Even in the absence of waiver, it is within the discretion of the circuit court to decide whether evidence is relevant and admissible, and its decision will not be reversed absent a clear abuse of discretion resulting in manifest prejudice to defendants. *People v. Hayes* (1990), 139 Ill. 2d 89, 130, 564 N.E.2d 803.

■ Here, unlike the police expert in *Brown*, Officer Winburn did not testify to such extensive "profile" evidence unrelated to the issues in the case. The testimony given by Officer Winburn more nearly approximates that given by a police expert in *People v. King* (1991), 218 Ill. App. 3d 248, 578 N.E.2d 217, where the court found similar evidence helpful to a jury in differentiating between narcotics users and dealers, and noted that the jury was not required to accept such testimony. Lastly, were we to find that the circuit court erred in allowing the questioned testimony, the presence of overwhelming evidence against defendants here renders any error harmless.

## B

Next, defendants argue that a finding of possession with intent to deliver was manifestly erroneous because of an alleged absence of direct evidence of delivery or support for an inference of intent to deliver. Defendants insist that because they did not possess cocaine divided into packets, drug paraphernalia, cellophane for packaging, scales, mixing substances or a beeper (see *People v. Crenshaw* (1990), 202 Ill. App. 3d 432, 559 N.E.2d 1051), the circuit court should have ruled as a matter of law that the State failed to meet its burden of proving the offenses beyond a reasonable doubt and should have directed verdicts in their favor.

In determining whether the elements of a charged offense have been proved beyond a reasonable doubt, a reviewing court must consider record evidence in a light most favorable to the prosecution, with the objective of deciding whether any rational trier of fact could have found the essential elements of the offense to have been so proved. (*People v. Cordle* (1991), 210 Ill. App. 3d 740, 569 N.E.2d 209.) To support a conviction for unlawful possession of narcotics with intent to deliver, the State must establish that defendants had knowledge of the presence of narcotics, that the narcotics were in the immediate control or possession of defendants, and that defendants intended to deliver the narcotics to others. *People v. Pintos* (1989), 133 Ill. 2d 286, 549 N.E.2d 344.

■ The jury's finding that defendants knew of the presence of narcotics in the glove compartment is supported by the evidence. Officer Winburn testified that Gloria told him she and Robert came to Maywood because they were cheated out of money by someone who lived near 3rd Ave. and Fillmore. Officer Winburn found the cocaine and money in a bag in the glove compartment of the car. Both defendants told him that the money was from a "settlement" of some sort. It is highly improbable that both defendants knew about the settlement money found in the same container as the cocaine, but knew nothing about the cocaine itself.

The evidence shows further that both defendants controlled the vehicle. Officer Novak observed Robert sitting in the driver's seat. Defendants were married and lived together. Gloria told Officer Winburn the car was given to her as a gift from Robert. Robert told Officer Winburn that he gave the car to Gloria. Gloria told Officer Winburn, prior to opening the trunk, that a weapon would be found in the vehicle's trunk. The certificate of title for the car was in Robert's name. Two checks with Gloria's name on them were found in the car. Based upon these facts, the triers of fact properly could have found that both defendants jointly controlled the vehicle at the time of the stop.

Where, as here, it is shown that defendants controlled the contraband, this fact, in and of itself, gives rise to an inference of knowledge and possession by them which is sufficient to sustain a conviction for unlawful possession of cocaine, absent other facts and circumstances which might leave in the mind of the jury a reasonable doubt as to defendants' guilt. (*People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361.) Further, the amount of cocaine found in the vehicle under defendants' control reasonably could have given rise to an inference that such a quantity was in excess of that usually held for

personal use. (*People v. Schaefer* (1985), 133 Ill. App. 3d 697, 702, 479 N.E.2d 428.) There was no error.

### III

Defendants assert that the circuit court's reversal of its ruling granting a motion *in limine*, prohibiting the introduction of certain evidence allegedly discovered behind a house near where defendants were seen walking, violated defendants' rights to fair trials.

As previously set forth, before trial, defendants made a motion *in limine* asking that the State be prohibited from introducing evidence pertaining to items allegedly recovered from under a bush at the rear of 2039 South 3rd Ave., from which defendants were seen walking. The court initially granted the motion, but reversed itself following the testimony of the first witness and after a juror sent a note to the court asking whether the area behind 2039 South 3rd Ave. was ever searched by police. Based upon defense counsel's implication to the jury, that the police arrested Robert without observing any criminal activity, the court reversed itself as to the motion *in limine* in order to avoid a mistrial and because defendants themselves brought out the necessity for such evidence.

A ruling on a motion *in limine* is interlocutory in nature and may be reconsidered throughout the trial as the evidence progressively becomes more developed. (*Marshall v. Osborn* (1991), 213 Ill. App. 3d 134, 571 N.E.2d 492.) Defendants maintain that the reversal of the motion *in limine* here was problematic, however, in that it was based on the court's mistaken belief that the contraband found behind 2039 South 3rd Ave. was the basis for Robert's arrest. Further, defendants aver, by allowing in the evidence concerning items that were allegedly recovered from 2039 South 3rd Ave., they were subjected to evidence of other crimes, which had a prejudicial effect on the jury. Defendants urge that the items found were irrelevant to the issues in this case.

■ The questioned evidence consisted of three revolvers, of which one was partially loaded with ammunition similar to that found in defendants' auto, as well as suspect cocaine and suspect cannabis; it was clearly relevant to the case. The evidence was found in the vicinity of where Robert, Gloria and Dennis Stone were seen walking after disobeying Officer Novak's order to remain with their car. The fact that an additional quantity of similar drugs, weapons, and ammunition was recovered from that area tended to make the existence of defendants' knowledge of the contraband in their vehicle more probable than it would be without the evidence.

The admissibility of evidence at trial is a matter within the sound discretion of the trial court, and that court's discretion may not be overturned on appeal absent a clear abuse of discretion. (*People v. Illgen* (1991), 145 Ill. 2d 353, 364, 583 N.E.2d 515.) There was no such abuse here.

## IV

Defendants contend that the circuit court's denial of their motion for a mistrial, which was based on possible jury contamination and the alleged introduction of irrelevant testimony, denied their right to a fair trial.

■■ Defendants maintain that a mistrial should have been ordered in light of the court's expressed consideration as to whether the testifying officer would be considered incompetent, inexperienced or otherwise "dumb" in the eyes of the jurors without testimony as to what was found at 2039 South 3rd Ave. The decision whether to grant a mistrial is within the broad discretion of the circuit court (*People v. Robinson* (1984), 121 Ill. App. 3d 1003, 1014, 460 N.E.2d 392), and its determination will not be reversed unless it appears that there was a manifest necessity for the mistrial or that the ends of justice would be defeated by continuing with the trial. (*Robinson*, 121 Ill. App. 3d at 1014-15.) Such reasons are absent in this case.

## V

■■ Defendants argue that the cumulative errors in law and fact committed by the court resulted in a deprivation of defendants' right to a fair trial. We have reviewed the errors assertedly committed and find that they are without merit.

For the reasons stated, there are no bases upon which to disturb the jury's verdict in this case, which we must affirm.

Affirmed.

McCORMICK, P.J., and DiVITO, J., concur.