2026 IL App (1st) 231937-U

Fourth Division
Filed April 9, 2026

No. 1-23-1937

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of Cook County |
| | ) | |
| v. | ) | No. 21 CR 0977301 |
| | ) | |
| JERICHOE HINES, | ) | The Honorable Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |
| | ) | |

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justice Quish concurred in the judgment.
Justice Ocasio dissented.

**ORDER**

¶ 1    *Held*:    The defendant's convictions are affirmed where the armed habitual criminal statute is constitutional, the defendant was not prejudiced by the admission of evidence that was relevant to the aggravated battery charge, and there was probable cause to search his vehicle.

¶ 2    The defendant, Jerichoe Hines, was charged in connection with a shooting that took place in the 200 block of South Cicero Avenue in Chicago. A jury found him guilty of aggravated battery with a firearm, aggravated discharge of a firearm, and being an armed habitual criminal. After a jury trial, the judge entered an acquittal on the aggravated battery charge after the State conceded that it had failed to prove the victim's identity, but the jury found Hines guilty of aggravated discharge of a firearm and armed habitual criminal. The judge subsequently imposed concurrent

11-year sentences for armed habitual criminal and aggravated discharge of a firearm. On appeal, Hines argues that: (1) the armed habitual criminal statute is unconstitutional on its face, (2) he was unfairly prejudiced at trial by the admission of evidence that was relevant to the aggravated battery charge that the State ultimately failed to prove, and (3) his inculpatory statements to detectives after his arrest should have been suppressed as the product of an illegal search of his vehicle. For the following reasons, we affirm.

¶ 3                                                  I.  BACKGROUND

¶ 4        About thirty minutes after a bystander was wounded during a road-rage shooting incident on the west side of Chicago, police spotted Hines at a nearby gas station driving a vehicle that matched the description of the one involved in the shooting. They pulled him over and searched his car. The search uncovered crack cocaine, and he was arrested. A few hours later, Hines gave a statement to police detectives admitting that he had been the shooter. He was ultimately charged with armed habitual criminal, aggravated battery with a firearm, and aggravated discharge of a firearm.

¶ 5                                          A.  Suppression Hearing

¶ 6        Before trial, Hines moved to suppress his inculpatory statement to police on fourth amendment (U.S. Const., amend IV) and fifth amendment (U.S. Const., amend V) grounds. He alleged that the statement was the fruit of an illegal stop and search of his vehicle, which led to his arrest for possession of a controlled substance. He also alleged that he was under the effects of involuntary intoxication at the time of his statement, which made him unable to understand—and therefore knowingly waive—his *Miranda* rights. Both motions went to hearing on January 10, 2023.

¶ 7        The evidence at the suppression hearing established that, shortly after 8:30 p.m. on June 25, 2021, police received reports of a shooting that had taken place on Cicero Avenue near Adams Street. The incident was captured by a police camera, and officers put out a description of the suspected shooter as a Black male driving a white Chevrolet Equinox with a black roof rack. Around 9:00 p.m., an officer spotted a vehicle matching that description at a gas station at Cicero

and Jackson Streets, about one block away from the shooting. The officer followed the vehicle for a few blocks before pulling it over on Gladys Avenue, and additional officers responded to assist.

¶ 8    At 9:05 p.m., officers had ordered Hines to get out of his car, and they detained him. When asked if there was anything in his car, Hines indicated that he had cannabis. Officers then searched the car. They did not find cannabis, but they did uncover what they suspected to be crack cocaine in a door compartment. They placed Hines under arrest and drove him to the police station.

¶ 9    About two hours later, two detectives gave Hines *Miranda* warnings, and he waived his rights and agreed to talk to them. The detectives then questioned him about the shooting, and Hines eventually admitted his involvement and that he had fired the gun.

¶ 10    The court denied Hines' suppression motions. It found that, based on the description of the shooter and the shooter's vehicle, the initial traffic stop was justified as an investigative stop based on reasonable, articulable suspicion. During the investigative detention, the court continued, Hines admitted having cannabis in his car, and the police found suspected crack cocaine during their search, giving probable cause to arrest Hines for a narcotics violation. Having found probable cause on that basis, the court denied the motion to suppress on fourth amendment grounds. The court also denied Hines' motion to suppress based on an invalid *Miranda* waiver, a determination he does not challenge on appeal.

¶ 11                                B.  Trial

¶ 12    The case proceeded to a jury trial. The evidence showed that, at around 8:30 p.m. on June 25, 2021, after a near collision between a black sedan and a white SUV in the northbound lanes of the 200 block of South Cicero Avenue in Chicago, the driver of the SUV drew a gun and fired at least one shot at the sedan as it drove away. The shot hit an uninvolved pedestrian in the leg. Meanwhile, an officer working in the police department's "Strategic Decision Support Center" quickly accessed video of the shooting from a nearby police surveillance camera (a "pod observation device" or "POD camera"). He determined that the shooter's vehicle was a white Chevrolet Equinox with a black aftermarket roof rack, and he put out a description of the vehicle over police

radio. Shortly after 9:00 p.m., an officer pulled over a white Equinox with a black roof rack a few blocks away from the shooting. The driver was Hines. He was arrested, taken to the police station and questioned by detectives. Shortly before midnight, Hines admitted that he became involved in an altercation with a black car and fired a shot at it.

¶ 13    Relevant to the issues on appeal, the State presented evidence about the injured bystander. Officer Alex Posey testified that, when he responded to the shooting, he found a woman with a gunshot wound to her leg. Posey testified that the wound "was a bullet sized hole in her left leg" and that it still "was bleeding pretty substantially" after his partner applied a tourniquet. The State also introduced body-worn camera footage of Posey's interaction with the woman, which was played for the jury. The footage depicts a woman standing on both feet, leaning against a building and supported to some degree by police officers. A large pool of red blood is visible on the ground under her feet. An officer lifts her pant leg to apply a tourniquet above her left knee, exposing what appears to be a blood-soaked sock and somewhat less blood on her bare leg below the knee. The wound itself is not readily discerned in the footage. It appears that Posey is standing a few feet away, and there are three other officers between the camera and the wounded woman. Additionally, two other witnesses—an evidence technician and a detective—testified that they observed a blood stain on the sidewalk when they examined the scene, and the State introduced two photographs showing the dried blood stain.

¶ 14    The POD camera video of the shooting was played for the jury. It showed a black sedan and a white SUV headed northbound on Cicero. The sedan began to execute a U-turn from the far right-hand lane, into the path of the SUV, and both cars swerved to avoid a collision. The SUV then stopped as the sedan, now behind the SUV, continued making the U-turn. The driver of the SUV stood up, his upper body extending out of the open driver's window. The sedan briefly stopped as though words were being exchanged, then it continued with the U-turn, at which point the driver extended one of his arms out in the direction of the sedan. Nearby pedestrians reacted as though hearing a gunshot, one of whom staggered back into a vestibule. Both cars then drove off, the SUV headed northbound, the sedan headed southbound. Although the video quality makes

it impossible to discern a manufacturer's logo on the white SUV, the footage clearly showed the absence of a front license plate, a distinctive grille and window design, and a roof rack with two black crossbars. The State also played video from a private security camera that captured the shooting from a different angle and that, unlike the POD camera video, showed a distinct muzzle flash.

¶ 15    The State also introduced photographs and videos of a vehicle matching the SUV involved with the shooting at various locations before and after the incident. At 8:30 p.m., the vehicle was captured by a security camera pulling through a gas station at the corner of Jackson and Cicero, one block south of the shooting. A POD camera at that same corner captured the vehicle pulling out of the station less than a minute before the shooting, seconds before coming into view of the POD camera that captured the shooting. About 30 seconds after the shooting, the vehicle was seen continuing northbound on Cicero at Madison. About 12 minutes later, at 8:46 p.m., a vehicle fitting the description of the shooter's was captured by a POD camera at the corner of West End Avenue and Central Avenue, a little more than a mile west-northwest of the shooting. Two minutes later, that vehicle's license plate—later determined to be registered to Hines' mother—was recorded by a POD scanner located at Madison and Central. Finally, about 10 minutes after that, at 8:57 p.m., Hines was captured by a security camera parking his mother's Equinox at the same gas station that the shooter had pulled through less than half an hour earlier.

¶ 16    There was no evidence presented that the police ever recovered the gun used in the shooting or any bullets or shell casings. There also was no evidence of gunshot residue testing on Hines or the Equinox.

¶ 17    During closing arguments, the State relied on the evidence about the injury to the bystander as proving not only the aggravated battery with a firearm charge but also that Hines had carried and fired an actual firearm during the incident, emphasizing that the wound and the woman's blood proved that Hines had fired a real bullet from a real gun. Throughout its argument, the State referred to the woman with a gunshot wound by name. Defense counsel's objections that her name had never been introduced into evidence were ultimately overruled.

¶ 18    After deliberating for two and a half hours, the jury found Hines guilty of all three charges.

¶ 19                              C.  Posttrial and Sentencing

¶ 20    Hines filed a motion for a new trial. As relevant here, he renewed his arguments regarding the victim's identity, asserting that the State had failed to prove her identity and that the State had improperly referred to her by name despite no evidence being presented as to who she was. The State conceded that it had failed to establish that the victim was the person it had specifically alleged in the indictment, and the court entered a judgment notwithstanding the verdict acquitting Hines of aggravated battery with a firearm. It otherwise denied the motion for a new trial and sentenced Hines to concurrent 11-year terms for armed habitual criminal and aggravated discharge of a firearm.

¶ 21                                    II.  ANALYSIS

¶ 22    On appeal, Hines argues that: (1) the armed habitual criminal statute is unconstitutional, (2) evidence introduced to show the victim's injuries was unfairly prejudicial as to the armed habitual criminal and aggravated discharge counts, and (3) his inculpatory statement should have been suppressed as the product of an illegal search.

¶ 23                    A.  Constitutionality of Armed Habitual Criminal

¶ 24    We first address Hines' challenge to his conviction for armed habitual criminal. He argues that the statute defining that offense is facially unconstitutional under the second amendment. We agree with the cases holding that the armed-habitual-criminal statute is constitutional because it is consistent with our nation's historic tradition of firearm regulation. *People v. Brooks*, 2023 IL App (1st) 200435, ¶¶ 84-105; *accord People v. Wade*, 2025 IL App (1st) 231683, ¶¶ 44-50; *People v. Macias*, 2025 IL App (1st) 230678, ¶¶ 28-34. Hines' constitutional challenge fails for the reasons given in those cases.

¶ 25    B.  Evidence of Injury to Victim

¶ 26    Next, Hines argues that, as a result of proceeding on a charge of aggravated battery with a firearm, the State was permitted to introduce detailed and graphic evidence about the nature of the injury sustained by the bystander who was struck by a stray bullet. His argument is that: (1) the State should not have proceeded on the charge of aggravated battery with a firearm because it knew it would not be able to prove the charge, and (2) had the State proceeded only on the charges of armed habitual criminal and aggravated discharge of a firearm, the evidence he challenges on appeal would not have been admissible. This framing implicitly concedes that the evidence was, in fact, admissible when it was admitted at trial.

¶ 27    Regardless, Hines' argument is founded on the proposition that this evidence would not have been admissible at a hypothetical trial at which Hines was charged only with armed habitual criminal and aggravated discharge of a firearm. We do not agree. Hines correctly concedes that the evidence was relevant to whether he possessed and discharged a firearm. He argues instead that its probative value was so significantly outweighed by the danger of unfair prejudice that it would have been an abuse of discretion to allow the State to admit all of it. In this context, prejudice means "an undue tendency to suggest decision on an improper basis, commonly an emotional one, such as sympathy, hatred, contempt, or horror." *People v. Edgeston*, 157 Ill. 2d 201, 237 (1993) (citing *People v. Eyler*, 133 Ill. 2d 173, 218 (1989)).

¶ 28    Hines suggests some reasons why this evidence was prejudicial. He analogizes evidence of the bystander's gunshot wound to evidence of other crimes, and he asserts that it was "inflammatory" and "graphic" and that the jury might have convicted him based on their "emotions." We find none of these reasons persuasive. The analogy to other-crimes evidence is inapt where the evidence the State used was evidence of the *charged* offenses of armed habitual criminal and aggravated discharge of a firearm, not some unrelated incident. See *People v. Spyres*, 359 Ill. App. 3d 1108, 1112 (2005) ("The term 'other-crimes evidence' encompasses misconduct or criminal acts that occurred either before or after the allegedly criminal conduct for which the defendant is standing trial."). Hines does not explain what made this evidence unusually graphic

or inflammatory, nor does he elaborate on how it created a significant risk that the jury would convict him based on emotion, not evidence. His real complaint seems to be that the State put on evidence that too convincingly showed that a woman was shot. Using relevant evidence to inflame the jury is prejudicial. Using it to prove a defendant's case is not. We find no error.

¶ 29                                    C.  Suppression of Hines' Confession

¶ 30        The final issue we consider is whether the trial court erred by denying Hines' motion to suppress his inculpatory statement to police. When reviewing a ruling on a motion to suppress, we apply the two-part standard of review articulated in *Ornelas v. United States*, 517 U.S. 690, 699 (1996). See *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). Under that standard, we defer to the trial court's findings of historical fact unless they are against the manifest weight of the evidence. *Id.* However, whether the evidence at issue should be suppressed based on the facts as determined by the fact-finder presents a legal question. *Id.* Hence, we assess those established facts in relation to the issues and draw our own conclusions as to whether suppression is warranted. *People v. Harris*, 228 Ill. 2d 222, 230 (2008).

¶ 31        Searches of automobiles generally do not require a warrant, but they must still be supported by "probable cause to believe that the automobile contains evidence of criminal activity that the officers are entitled to seize." *People v. James*, 163 Ill. 2d 302, 312 (1994). Probable cause requires "more than bare suspicion." *People v. Jones*, 215 Ill. 2d 261, 273 (2005). In general, it requires that there be "a reasonable ground for belief" that the relevant proposition is true, and it requires that belief to be "particularized" to the subject of the search. *Id.* at 274. It is assessed from a practical, nontechnical perspective based on "the factual considerations of everyday life on which reasonable and prudent persons—not legal technicians—act." *Id.* Beyond that, it is a "fluid concept" that "is not readily, or usefully reduced to a neat set of legal rules." *Id.*

¶ 32        On appeal, Hines does not challenge either the initial stop of his vehicle or his arrest upon the discovery of crack cocaine. He challenges only the legality of the search of his vehicle, which he argues was not supported by probable cause. The State contends that the search of the vehicle was

valid because there was probable cause to believe that the search would uncover evidence of the shooting.

¶ 33     We agree with the State that there was probable cause to search the vehicle. At the time of the search, officers knew that there had been a shooting involving a white Chevrolet Equinox with a distinctive trait—a black roof rack—near the corner of Cicero and Adams. An officer saw a vehicle matching that description less than 30 minutes after the shooting at a gas station at the corner of Cicero and Jackson—about one block south of where the shooting took place. The driver of the vehicle matched the description of the driver that had been given over the radio. The totality of these circumstances alone, known to the police, supports a finding of probable cause to search the vehicle.

¶ 34     In *People v. Stone*, 244 Ill. App. 3d 881, 883 (1993), a police officer received a radio report of shots fired from a dark-colored vehicle bearing Indiana license plates. The officer arrived at that location two minutes later and observed a dark blue or black Buick Riviera, with Indiana license plates, parked a quarter block to the south of the address given. *Id*. at 884. The officer pulled up behind the vehicle and ordered the occupants out. *Id*.

¶ 35     This court found that probable cause existed for the officer to search the vehicle in question. *Id*. at 889. This finding was based on the fact that the police officer received information from a radio dispatch reporting shots fired from a vehicle bearing a resemblance to the vehicle in question, and that the vehicle was found in the vicinity of the shooting. *Id*. This court noted that the police officer "had the right to search the vehicle for weapons," and that a warrant need not be obtained "when police have probable cause to believe that the vehicle was used in or contains evidence of a crime." *Id*.

¶ 36     Similarly, here, police officers received information from a radio dispatch about a shooting from a vehicle that bore a resemblance to Hines' vehicle. It was spotted in the vicinity of where it was reported to have been less than 30 minutes earlier. These circumstances show that police had probable cause to search the vehicle for weapons.

¶ 37        In *People v. Thornton*, 47 Ill. App. 3d 604, 607 (1977), officers went to the scene of a shooting where, after talking to bystanders, they radioed a message to look for a 1963 or 1964 gold Rambler with two Black males in it. After going to the hospital and returning to the area of the shooting, the officers saw a 1963 or 1964 gold Rambler in an alley. *Id*. The officers searched the vehicle and found a gun. *Id*. On appeal, this court found that "when police first came upon the car in question, probable cause existed for its search because it matched the unique description of the vehicle used by the assailants in leaving the crime and because the police could reasonably have believed the murder weapon was still in the car." *Id*. at 608-09.

¶ 38        Here, the police officers received a unique description of the vehicle—a white Chevrolet Equinox with a black roof rack. They located a vehicle that matched that unique description within the vicinity of where the shooting had taken place and less than 30 minutes from the time of the shooting. Accordingly, we similarly find that the police could reasonably have believed that the weapon used in the shooting was in the vehicle and therefore had probable cause to search the vehicle.

¶ 39        In light of these cases, and considering the totality of the circumstances presented here, we find that the facts known to the officers at the time of the search of the vehicle were sufficient to support a reasonable belief amounting to probable cause that the vehicle contained the firearm used in the shooting, and thus the search was lawful. We find that the trial court did not err in denying Hines' motion to suppress evidence. See *People v. Gonzalez-Carrera*, 2014 IL App (2d) 130968, ¶ 19 (we may affirm the ruling on a motion to suppress on any basis in the record).

¶ 40                               III.  CONCLUSION

¶ 41        For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 42        Affirmed.

¶ 43    JUSTICE OCASIO, dissenting:

¶ 44    I agree with the majority that the armed-habitual-criminal statute does not violate the second amendment and that the admission of evidence concerning the victim's injuries was not erroneous. Unlike the majority, however, I would find that the police lacked probable cause to search Hines's vehicle or probable cause to arrest him independent of the crack cocaine discovered during that search.

¶ 45    At the time of the search, officers knew that there had been a shooting involving a white Chevrolet Equinox with a roof rack near the corner of Cicero and Adams and that the shooter had fled in his vehicle northbound on Cicero. They also knew that Hines's vehicle was a white Chevrolet Equinox with a roof rack, and they knew he had been spotted at a gas station at the corner of Cicero and Jackson, which was one block south of where the shooting had taken place. These circumstances made it reasonable to suspect that Hines's vehicle was the same one that had been involved in the shooting. That reasonable suspicion, in turn, made it legally permissible for the police to make a temporary investigatory stop. See *People v. Close*, 238 Ill. 2d 497, 505 (2010) ("Under *Terry*, a police officer may conduct a brief, investigatory stop of a person where the officer reasonably believes that the person has committed, or is about to, commit a crime.") (citing *Terry v. Ohio*, 392 U.S. 1, 22 (1968)).

¶ 46    Reasonable suspicion, however, falls short of probable cause. See *id.* There is not probable cause to support a vehicle search unless the circumstances would "justify a reasonable person in believing that the automobile contains contraband or evidence of criminal activity." *People v. Hill*, 2020 IL 124595, ¶ 23. Similarly, for there to be probable cause to arrest, the circumstances must "justify a reasonable person to believe that the defendant has committed is committing a crime." *People v. Jones*, 215 Ill. 2d 261, 273-74 (2005). And in either case, probable cause "must be particularized with respect to the person to be searched or seized." *Id.* (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

¶ 47    Here, the facts known to the officers did not connect Hines or the vehicle he was driving to the shooting with any particularity. The facts known to the police—that he was driving the same kind of car, with the addition of a roof rack, in the same neighborhood about half an hour later—provided a reasonable basis to think that it *might* be the car used in the shooting (justifying a temporary investigative stop), but at the same time, none of those facts reasonably justified a conclusion that it *was in fact* the car they were looking for. The same facts the majority relies on to find probable cause would apply to any number of people who might be driving the same kind of car in that neighborhood that night. If there was probable cause to arrest Hines on suspicion of attempted murder and conduct an exhaustive search of his vehicle, then anyone else who happened to fit that profile could also be lawfully subjected to arrest and search.

¶ 48    Situations like these are precisely the reason the law recognizes that temporary investigative detentions can be constitutionally valid. The purpose of an investigative stop is to give the officer a chance to investigate to either confirm or dispel the suspicion that prompted the stop. *People v. Ross*, 317 Ill. App. 3d 26, 31 (2000). But if the suspicion prompted the stop does not ripen into probable cause, officers must allow whoever they stopped to go on their way. *People v. Delaware*, 314 Ill. App. 3d 363, 373 (2000) (citing *Illinois v. Wardlow*, 528 U.S. 119, 126 (2000)). Here, Hines was properly stopped based on reasonable suspicion, but no further investigation ensued. There is no evidence that Hines said anything incriminating or that the officers observed something incriminating before performing the search. Without developing probable cause, the officers jumped straight into a full search of his vehicle and an arrest. While there may have been some level of suspicion present, perhaps reasonable, it did not, on its own, provide probable cause for an arrest or a vehicle search.

¶ 49    Neither case the majority relies on support its conclusion that police had probable cause to search the vehicle for evidence of the shooting or to arrest Hines for committing it. In *People v. Stone*, 244 Ill. App. 3d 881 (1993), there was probable cause to arrest the occupants of a vehicle that matched the description of one involved in a shooting that had been reported over police radio only two minutes earlier. See *id.* at 883-84, 888-89. Here, Hines was not caught lingering at the

scene only minutes after the shooting, he was seen nearby almost half an hour later, well after the shooter had fled in the other direction. In *People v. Thornton*, 47 Ill. App. 3d 604 (1977), probable cause was not even at issue. See *id.* at 608 ("Neither in his brief nor in his argument on the first contention here does defendant raise any question as to probable cause."). The issue before the court was whether the police's decision to stake out the car rather than search it immediately meant that there were no exigent circumstances to justify performing the search without a warrant. See *id.* at 608-09. And, in any event, the description of the car in *Thornton* was more precise than the description here: it included a model year (1963 or 1964) and a distinguishing feature—a damaged front right fender—more specific than an aftermarket roof rack. *Id.* at 605-07.

¶ 50     Because the police lacked probable cause to believe that Hines's vehicle was the one involved in the shooting or that Hines was the shooter, neither the search of the vehicle nor Hines's arrest can be justified on that basis. The State's alternative theory, that there was probable cause to believe that Hines was in illegal possession of cannabis inside the vehicle, is also unpersuasive because the State did not introduce evidence showing that the officers smelled the odor of raw cannabis emanating from the car. See generally *People v. Molina*, 2024 IL 129237, ¶¶ 52-58 (explaining why the odor of raw cannabis, but not burnt cannabis, can supply probable cause). The warrantless search was therefore conducted in violation of the fourth amendment. And because Hines's inculpatory statements following his arrest were the fruit of that illegal search, the trial court erred when it denied the motion to suppress.

¶ 51     I would reverse and remand for a new trial or, at minimum, remand for an attenuation hearing.